Affirming.
The demurrer of the appellant, who was the defendant below, to the petition as amended of the appellee, plaintiff below, having been overruled, the appellant declined to plead further. A stipulation was then entered into whereby the appellant waived the right to have the damages, with respect to the matters set forth in the petition, fixed or assessed by a jury or the court, and whereby it agreed that the amounts alleged in the petition represented the correct amount of damages sustained by the appellee and which it should recover from the appellant if appellee was entitled to recover at all. Thereupon the court entered judgment for the appellee in accordance with the prayer of its petition, and from that judgment this appeal is prosecuted.
From the petition, it appears that on the 28th day of July, 1916, the Fourseam Block Collieries Company entered into a contract with the appellee whereby the latter agreed to furnish the necessary rails, spikes and switches for the construction of a mine track or switch to run from the appellee's main line a little over a mile to the collieries company's mines. The collieries company agreed to do the necessary grading; to furnish all other materials and labor necessary to complete the work and to pay rent for the use of the rails furnished by the appellee. The collieries company also agreed to maintain and keep the tracks in good order, to pay for the repairs and renewal of the same, and on the termination of the contract to pay the appellee the cost of removing them. It was further stipulated in this contract that the collieries company was "to keep the tracks free from obstruction" and to hold the appellee "harmless from the claims and demands from any and all persons on account of any damages or injuries caused directly or indirectly by the existence, location or condition of any structures or obstructions of any kind on the promises of the second party (the collieries company) or by any obstructions on said track." By a subsequent arrangement between all *Page 553 
the parties the appellant succeeded to all the rights, duties, liabilities and obligations of the collieries company under this contract.
On September 23, 1922, while the contract above outlined was in full force and effect, the appellee was engaged in moving a cut of empty coal cars over the switch in question to the tipple of the appellant. A push car of the appellant had been placed so close to this spur track that the coal cars collided with it and as a result they were derailed, and injured, one of them being demolished, and appellee's conductor and brakeman were injured. The conductor and brakeman each made a claim against the appellee on account of the injuries they had thus received. The appellee duly notified the appellant of these claims and called upon it to adjust them or defend them. The appellant refused to do so but agreed that the appellee might make the best defense or settlement it could and appellant would not question such action on its part but would, if sued by appellee for any settlement made or judgment paid on account of such claims, defend solely on the ground whether or not there was any liability upon it under the contract. The appellee thereupon made a settlement with the conductor and brakeman and by this suit sought to recover the sums paid out on these settlements and the damages it had sustained to its equipment.
The appellant's defense is bottomed on the theory first, that as the appellee did not allege that the push car had been left near the spur track on account of some negligence on its part or that of some of its agents, the petition was defective; and, secondly, that the contract in question in so far as it puts any liability on appellant in a case of this character is against public policy because its purpose is to relieve the carrier of its common law liability for negligence.
The position of appellant is not sound. First, the obligation undertaken by appellant in this contract, so far as here pertinent, is not predicated on any negligence on its part. The appellee's cause of action arises ex contractu and not exdelicto and the respective rights and duties of the parties as well as their liabilities are governed solely by the terms of the contract they made. The obligation to keep the tracks free from obstruction and to hold the appellee harmless from any claims on account of any failure on appellant's part to so keep the tracks, is an absolute one. Appellant might have made *Page 554 
it a condition of liability that it should be guilty of some negligence, but this it did not do. It was free to make any contract it chose so long as it was not against public policy and having chosen to undertake an absolute liability rather than a qualified one, it cannot now be heard to complain of the the choice it made. The petition, therefore, was not defective because it failed to allege that the push car had been placed too near the spur tracks by reason of some negligence of appellant.
Neither call the second contention of appellant stand. The appellee, by this contract, was not attempting to contract against its common law liability for negligence. It was simply providing for such liability. As an original proposition, it was not compelled to construct this switch. Therefore the undertakings it entered into with reference to such construction were ample consideration to support the obligations of appellant. As here involved, these obligations simply put the appellant in the position of an insurer of appellee's possible liabilities arising out of the maintenance and operation of this spur track. This contract did not, nor could it, exonerate the appellee from responding in damages to those injured by its negligence. Its common law liability remained undisturbed. But having so responded, the appellee had the right to look for reimbursement to the one who had agreed to insure it, so to speak, against such loss. The carrier was not as a condition precedent to the performance on its part of any of its duties as a common carrier requiring the shipper to undertake the obligation here sought to be enforced. The construction of this long switch was no part of the appellee's duties as a common carrier. The appellant could not have required appellee to have built it. Under such circumstances, the reasoning of the court in Greenwich Ins. Co. v. L. N. R. Co., 112 Ky. 598, 66 S.W. 411, is quite opposite. In that case, by a contract, the railroad permitted an ice company to erect an icehouse on the railroad's right of way. The contract provided that if the icehouse be destroyed by fire, even though occasioned by the negligence of the railroad in not equipping its engines properly with spark arresters, no liability therefor should rest on the carrier. Touching such contract, we said:
 "But in the case at bar no such necessity exists to the owner of the building that he should erect it upon the company's right of way, nor is the company *Page 555 
compelled under any state of case to permit him to do so. It is under no obligation to extend its liabilities. It certainly could not be expected to voluntarily do so. Therefore the parties, when they come to contract with reference to the location of such a building, are dealing, at arm's length, and upon an equal footing. The railroad company can well say, while we are unwilling to assume any additional risks, we are willing to suffer you for your own convenience to build this house upon our right of way within the zone of recognized and peculiar danger from fires; but it must be understood that, if you accept the privileges of this grant, you alone must bear its burdens and casualties,' It is not so much that the railroad company contracts against its own negligence as that the brewing company agrees to alone bear all risks from fire. It receives a consideration for doing so. We cannot see that the public are in any wise affected by such a contract, nor can they be. Hartford Fire Ins. Co. v. Chicago, M. St. P. R. Co., 17 C.C.A. 62, 70 Fed. 201, 30 L.R.A. 193; Id., 175 U.S. 91, 20 Sup. Ct. 33, 44 L.Ed. 84; Griswold v. Railroad Co. (Iowa) 53 N.W. 295; Stephens v. Southern Pac. Co. (Cal.) 41 P. 783, 29 L.R.A. 751, 50 Am. St. Rep. 17; King v. Same (Cal.) 41 P. 786, 29 L.R.A. 755."
So in this case. The obligation imposed upon appellee was not extorted from it as a condition to the performance by appellant of any of its common law duties. It was freely undertaken for the agreement by appellee to do something it was not required to do. The contract was not one of exemption from appellee's common law liability for negligence. It was only a contract of indemnity for such liability. Such contracts contravene no settled policy of this state. Quite the contrary. Casualty insurance companies are authorized by law to do business in this state. Employers who are by the Workmen's Compensation Act required to pay to their employes the compensation therein prescribed are not only permitted but are in most instances required to insure themselves against this obligation. Most automobile owners insure themselves against claims which may be asserted against them even for their own negligence. So we see that it is the settled policy of this state to permit those who may have to respond in damages to those they *Page 556 
injure to insure themselves against such loss. That is all the present contract does. It plainly contravenes no public policy of this state.
A contract very similar to the one here in question was before the Louisiana court in the case of N. O. G. N. R. Co. v. S. T. Alcus Co., 105 So. 91. The shipper in that case had erected a ramp or loading platform too near a switch track constructed under a contract like the one in this case. An employe of the carrier was injured by reason of the close proximity to the track of this platform. After paying the employe for the damages he sustained, the carrier sought reimbursement from the shipper. The latter made defense on the same ground as here asserted, that is, that the contract was against public policy. The Louisiana court disallowed such defense and sustained the carrier's recovery. Appellant seeks to differentiate this case on the ground that there the shipper was actually guilty of misdoing while here such is not shown. But the point the court had to decide was whether or not the contract, which was broad enough to cover an obligation absolute as well as conditional, was against public policy and the court said that it was not. The validity of the contract was not measured by the extent of the shipper's obligation but by the obligation itself.
Unless plainly subversive of public policy, the courts have upheld contracts of indemnity comparable to the one before us. See John Griffiths Sons Co. v. National Fire Proofing Co.,310 Ill. 331, 141 N.E. 739, 38 A.L.R. 559. There is no sound reason why this one should not also be upheld. As the views of the lower court conform to those herein expressed, its judgment is affirmed.