## CITY OF CLEVELAND, OHIO, v. BALTIMORE & O. R. CO.
### No. 6426.

Circuit Court of Appeals, Sixth Circuit.
June 8, 1934.

G. C. Locke, of Cleveland, Ohio (W. George Kerr and William C. Dixon, both of Cleveland, Ohio, on the brief), for appellant.

W. T. Kinder, of Cleveland, Ohio (Tolles, Hogsett & Ginn and Geo. D. Bonebrake, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and HAHN, District Judge.

HICKS, Circuit Judge.

In July, 1930, the city of Cleveland, appellant, planned the construction of a sewer known as the Cuyahoga Valley Main Sewer and let the work to a contractor. It was to pass across the right of way and under the tracks of the Baltimore & Ohio Railroad Company, appellee, west of the intersection

of West Third street and Huston avenue. By September 17 the contractor had excavated up to appellee's property line and appellant had concluded negotiations for an easement through and under the property for the construction and maintenance of the sewer. These negotiations were embodied in an agreement, to which appellant, by an ordinance passed on September 15, gave its approval, the material portions of which are printed in the margin.[1]

Upon the execution of this agreement appellee drove pilings on its right of way along each side of the proposed sewer trench and on the morning of September 19 cut and removed the tracks between the pilings so that the contractor could excavate thereunder by using a clam shell. This excavation left a trench approximately 20 feet wide and 20 feet deep which the pilings served to shore up. On the same day when the work was sufficiently advanced appellee placed I-beams over and across the trench, resting the ends upon the tops of the two rows of pilings. It then laid ties upon the I-beams and while its workmen were engaged in spiking rails to the ties, an angle bar, weighing approximately eighteen or twenty pounds, was negligently jarred from the track so that it fell upon and seriously injured Antonio Araca, a laborer of the contractor, who was at work in the trench underneath.

Araca thereafter brought suit against appellee for his injuries. Appellant was notified of the suit and was requested to assume charge of its defense, but declined to do so. Thereafter appellee settled the suit by paying Araca $8,000 and costs, to which settlement appellant agreed and further waived any defense against appellee by reason of the suit having been disposed of by settlement rather than trial. Appellee brought suit against appellant to recover the amount of the settlement and the case was tried by the court without a jury. The suit was based upon the agreement of September 15, 1930. The court made findings of fact and conclusions of law and rendered judgment for appellee.

The facts are undisputed. As found by the court they were substantially as set forth above. The principal controversy was over the interpretation of the agreement, the court concluding that it indemnified appellee for the loss incident to the injury to and suit by Araca. Hence this appeal.

---

[1] "The City agrees:

"* * * 2. To do all the work, furnish all the labor and material necessary, at its sole cost and expense, to construct and thereafter to maintain, alter, reconstruct, and/or repair said sewer in a manner so as not to interfere with the continuous operations of the Railroad;

"3. To reimburse the Railroad, within thirty (30) days after the receipt of bills rendered by the Railroad, for all costs and expenses in connection with or arising out of the support by the Railroad of its tracks during the construction, reconstruction, operation, maintenance, alteration and/or repair of said sewer. It is mutually agreed that such costs and expenses shall include the costs of all labor, material and work furnished by the Railroad for the support of its tracks and the protection of traffic during such construction, reconstruction, operation, maintenance, alteration or repair of the sewer; * * *

"* * * 7. As part of the consideration for the easement granted and the right given by the Railroad to the City to cross under its track with such sewer, the City agrees as follows:

"(a) That the Railroad shall have the right, at any time, to connect its own private sewer or sewers draining adjacent property with such sewer constructed by the City;

"(b) That the Railroad shall not be charged, taxed or assessed by the City or any of its departments, officers or representatives, any assessment or compensation by reason of the construction, operation, use, or maintenance of such sewer along or adjacent to any property of the Railroad between Huston Avenue and West 7th Street.

"(c) To indemnify and save the Railroad free and harmless from any and all damages to person or persons (including employees of the Railroad) or property (including that belonging to or in the custody of the Railroad), by reason of or in any way connected with the erection, construction, reconstruction, maintenance, alteration and/or repair of said sewer at such crossing, with the Railroad track by the City and/or its contractors, agents, employees or the sub-contractors thereof."

"The Railroad agrees:

"1. To support its track during the construction of said sewer by the City and to furnish the necessary work, labor and materials necessary for such support, the cost thereof, however to be paid by the City as provided in section (3) supra.

"The Railroad agrees to furnish only such labor, material and work as is necessary to such support of its track, but the amount and cost thereof furnished by the Railroad shall be within its sole discretion."

Appellant's contention is that paragraph 7, clause (c), limits the indemnity to damages caused "by the city and/or its contractors, agents, employees or the sub-contractors thereof," and that the loss which was caused by the neg'igence of appellee was not covered. We cannot accept this view. .

Contracts must be construed with reference to the situation and surroundings of the parties. The sewer was appellant's project. It desired the easement and appellee was willing to grant it but upon the express provision that the work should be at the sole cost and expense of appellant. Appellee naturally desired that it should itself protect and support its track during the construction work and agreed to do so and to furnish the labor, material and work necessary thereto but upon the condition that the cost should be paid by appellant.

We think this idea of complete indemnity runs through paragraph 7 (c). Clause (c) does not limit "any and all damages" to such as are caused by appellant or its agents. It does not establish a rule for determining legal liability as between the parties. It not only gave recognition to the fact that the sewer was to be constructed by the city and its agents but to the further fact that the parties had in mind the obligation of appellee to support its track during the construction work. As found by the District Judge, the work required of each party was to be carried on simultaneously. The support of the track was integrally connected with the construction of the sewer, and was required only on account of the sewer. Further than the privilege of connecting with the sewer the agreement conferred no benefit upon appellee. Under such circumstances it was but natural that appellee should demand protection from the consequences of its own acts in doing its part of the work. It had the right to require such an obligation. Santa Fe, P. & P. Railway Co. v. Grant Bros., 228 U. S. 177, 33 S. Ct. 474, 57 L. Ed. 787; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 24 F.(2d) 347 (C. C. A. 6); Baltimore & O. R. Co. v. Youngstown Boiler & Tank Co., 64 F.(2d) 638, 640 (C. C. A. 6). And we think the all-inclusive language in 7 (c) "to indemnify and save the railroad free and harmless from *any and all damages to person or persons * * * by reason of or in any way connected with the * * * construction of said sewer * * *"* (italics ours) is sufficient to establish the city's obligation. Buckeye Cotton Oil Co. v. L. & N. R. Co., supra. And that the language

"by the City and/or its contractors, agents, employees or sub-contractors thereof" but serves to identify the activities indemnified against rather than to limit the city's obligation to injuries caused by it or its agents and contractors. To hold that the agreement indemnifies against the acts of appellant and its agents only is to destroy its value. Appellee needed no protection against the misconduct of appellant or those acting for it for the law could not hold appellee responsible therefor, since appellant, its contractors and employees were in no sense the agents of appellee.

Appellant advances the further contention that the agreement in question is ultra vires, and takes this position after the sewer had been completed and was in use. We pass by the question whether appellant is therefore now in a position to make this defense and content ourselves with saying that we think it is without merit.

Section 3, article 18, of the Ohio Constitution provides as follows: "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

Section 7, art. 18, also provides: "Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 1 of the charter of the city, adopted pursuant to the authority conferred by sections 3 and 7 of the Constitution, specifically permitted the city to "create, provide for, construct, regulate and maintain all things of the nature of public works and improvements" and section 2 provides that: "Sec. 2. The enumeration of particular powers by this charter shall not be held or deemed to be exclusive but, in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof, the city shall have, and may exercise all other powers which, under the constitution and laws of Ohio, it would be competent for this charter specifically to enumerate."

We have no doubt that by virtue of these constitutional and charter provisions the city was warranted, if not expressly, at least by implication, in the execution of the agreement in question.

The judgment of the District Court is affirmed.