[Civ. No. 11219.   Second Appellate District, Division One.—July 20, 1937.]

SOUTHERN PACIFIC COMPANY (a Corporation), Appellant, v. C. A. FELLOWS et al., Respondents.

W. I. Gilbert for Appellant.

H. C. Johnston, Mills, Hunter & Dunn and Edward C. Mills for Respondents.

YORK, J.—The facts upon which appellant railroad company bases its claim to recover upon an indemnity agreement, and a surety bond executed pursuant thereto by respondent Fellows, as principal, and respondent corporation, as surety, are contained in a stipulation of facts set out in the bill of exceptions herein.   It is there shown, among other things, that on December 6, 1923, appellant railroad company and respondent Fellows, as contractor, entered into a contract by which the latter undertook the construction of a locomotive erecting shop for the railroad company.   In addition to a provision requiring respondent contractor to furnish a surety bond insuring the faithful performance of

his contract, the said contract contained an indemnity clause to the following effect:

"Sec. 21. Contractor expressly agrees to indemnify and save Railroad harmless from and against any and all claims, loss, damage, injury and liability howsoever same may be caused, resulting directly or indirectly from work covered by this agreement."

During the course of construction of said building, one L. T. McCready, an employee of respondent contractor, was injured, and in an action which he thereafter brought against the railroad company in the United States District Court for the Southern District of California (*McCready* v. *Southern Pac. Co.*, 47 Fed. (2d) 673), he recovered judgment, in full satisfaction of which the appellant railroad company paid to him on November 2, 1931, the sum of $33,543.25. By the instant action appellant seeks to recover upon the surety bond, above-mentioned, the amount of the judgment which it paid to McCready together with $2,303.21 expended by it in connection with the defense of the McCready action, a total of $35,848.46, with interest thereon from November 2, 1931, and costs of suit herein.

From a judgment in favor of defendants, railroad company takes this appeal and thereby presents to this court for decision the following question: "Does the indemnity agreement in question (to-wit, section 21 of the Construction Contract) indemnify the Southern Pacific Company against the consequences of its own negligence?" In other words, this court is called upon to construe the provisions of said section 21 and to decide whether or not it is comprehensive enough to indemnify railroad company for an injury caused by its own negligence.

It appears from the stipulation of facts hereinbefore referred to that the said injury occurred in the manner following, to wit: The building under construction was approximately 400 feet long, 75 feet wide and with side walls 25 feet high. On August 18, 1924, the date upon which the injury was sustained, one-half of the building was completed and in use by railroad company, and respondent contractor was engaged in completing the remainder thereof. In the completed portion, railroad company had installed and was operating two electric cranes suspended from an I–beam 15 or 16 inches wide, on the top of which was set a rail on which ran the wheels of the crane. At the side of the I–beam

and slightly below the top of it railroad company had installed and supported by means of a bracket three uninsulated trolley wires, carrying 450 volts of electricity and furnishing power to the cranes. The beam and trolley wires ran the entire length of the building, and the beam had been constructed in the unfinished portion thereof and the trolley wires installed there by the railroad company. However, no power had been turned on in the trolley wires extending into the incompleted portion of the building until two or three days before August 18, 1924, when a splice of the trolley wires was made between the finished and the unfinished portions by railroad company's employees and the current turned on by them throughout the length of the entire building, including both the finished and the unfinished portions. At this time railroad company's employees put up signs marked ''High Voltage—Danger''. During this period the I–beam and rail to the incompleted portion of the building had a scaffolding fastened to it by means of cleats around it from a cross-beam which rested on top of the I–beam. Prior to August 18th approximately 100 feet of the scaffolding, beginning with the end of the finished portion of the building and running for said length into the unfinished portion thereof, had been removed, and railroad company was operating two cranes upon the I–beam and trolley wires extending into the unfinished portion of the building as far as the scaffolding had been removed, to wit, about 100 feet. These two cranes were being operated on said 100 feet for the purpose of hauling mortar, boxes, cement and rails for the respondent contractor, and some boilers and parts of engines had been moved and placed in the incompleted unit. On the morning of August 18, 1924, L. T. McCready was instructed by his superior, who was in the employ of respondent contractor, to go upon said beam and to remove a certain 2x8 plank, one end of which rested upon and was fastened by cleats to said beam; this work was done in connection with the further removal of the scaffolding around the said I–beam. In order to remove the braces it was necessary for McCready to sit on the I–beam astraddle of the rail with the rail between his feet and to use a pinch bar to take off the cleats. After removing the cleats, McCready held the cross-bar to keep it from moving in either direction, stooping over and holding the top of the cross-bar to keep it from falling. It would then be lowered by means of a rope tied to it, the rope

running over the I–beam. McCready was assisted by three other men.

It also appears from said stipulation of facts that before starting to work to remove said scaffolding McCready knew the wires running along the side of the I–beam were charged with electricity, knew that railroad company had refused to cut the current and understood the danger of coming into contact with electric wires and had been warned of such danger; that two or three days prior to August 17th, the construction foreman for respondent Fellows had complained to one Franklin, the representative of railroad company in the construction of the building, and had asked him to deaden or shut off the current in the trolley wires running through the unfinished portion of the building, stating that he was going to send his men to take down the scaffolding around the wires and he was afraid they might be hurt. Franklin refused to deaden the wires or to cut off the current. On the said 18th day of August, 1924, while McCready was on the I–beam in the manner hereinabove set forth, the upright to which the other end of the plank was attached suddenly and unexpectedly slipped and McCready was thrown from his balance and falling, came into contact with the trolley wires charged with electricity, thereby suffering the loss of a part of his left hand and crippling the remainder of his hand.

From the foregoing *résumé,* it is quite apparent that the injury to the workman McCready resulted at least ''indirectly from work covered by this agreement'', if not directly. While it is true that the trolley wires which furnished power to the cranes were under the control of appellant railroad company, the cranes were being operated in the incompleted portion of the building for the purpose of hauling mortar, boxes, cement and rails for respondent contractor. Also, these cranes were being used in the completed portion of the building by railroad company. In other words, there was a joint use by both parties of the building under construction and of the cranes. Since the record shows that the building being constructed was an addition to railroad company's erecting shop, we believe such joint use was clearly within the contemplation of both parties at the time the contract was entered into.

The indemnity clause in the contract, undertaking, as it does, to indemnify railroad company from and against ''*any*

*and all* claims, loss, damage, *injury and liability howsoever the same may be caused, resulting directly or indirectly from work* covered by this agreement'', is so sweeping and all-embracing in its terms that, although it does not contain an express stipulation indemnifying appellant against liability caused by its own negligence, it accomplishes the same purpose. (Italics ours.)

Many cases are cited by both parties in support of their respective convictions as to the interpretation of the clause in question. In none of them is the situation quite the same as that presented by the facts before us, and it is our belief that in construing this indemnity clause and interpreting its meaning, we should be governed by the facts and the surrounding circumstances.

The case of *Buckeye Cotton Oil Co.* v. *Louisville & N. R. Co.*, 24 Fed. (2d) 347, is helpful. That is a case which involves an indemnity clause under which the oil company agreed to hold the railroad company ''harmless from the claims and *demands of any and all persons on account of any damages or injuries caused directly or indirectly by the existence,* location or condition of any structure or obstruction of any kind'' on the premises of the oil company or by any obstruction of the tracks of the railroad company. (Italics ours.) A scaffold was erected by oil company over two of the tracks, and while railroad company was switching cars on one of these tracks, a car struck the scaffold, causing it to fall and injure a workman; the workman sued the railroad company and recovered, whereupon railroad brought suit under the clause referred to and was permitted to recover, the court stating: ''If . . . this structure or obstruction was an indirect cause of the injury, indemnity is given; and, as we have stated, under an interpretation of the evidence most favorable to defendant, it seems clear to us that the support was close enough to the track to involve some danger—a danger, we think, that reasonably might have been expected to result from the ordinary handling of cars. . . . We think an operating condition such as that, though involving some negligence on the part of the crew in moving the car, was within the indemnity contemplated by the contract.''

The judgment is reversed.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 17, 1937, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 16, 1937.