## KOKUSAI KISEN KABUSHIKI KAISHA v. COLUMBIA STEVEDORING CO., Inc.

District Court, S. D. New York.
March 4, 1938.

Crawford & Sprague, of New York City (George C. Sprague and Nicholas J. Healy III, both of New York City, of counsel), for plaintiff.

Mengel & Conroy, of New York City (Carl K. Mengel and George A. Conroy, both of New York City, of counsel), for defendant.

LEIBELL, District Judge.

Plaintiff is a shipowner and operator. Defendant is a contracting stevedore and terminal operator. On or about November 2, 1934, a contract dated October 1, 1934, was executed by the parties (See Ex. "A" annexed to the complaint) whereby defendant was to do the stevedoring and terminal work "on vessels owned and controlled by the party of the first part (plaintiff) loading and/or discharging at the port of New York." In said contract there is a clause which reads as follows:—

"It is also agreed that the party of the second part shall be responsible for any loss, personal injury, death and/or other damage that may be done to or suffered by workmen or other persons in connection with the operations to be carried out pursuant to this contract and shall indemnify and save harmless the party of the first part against claim for any such loss, injury, death and/or damage and against any claim for compensation to any such workmen whatsoever. This shall apply to all cases of such loss, injury, death and/or other damages including cases of loss, injury, death and/or damages for which either or both of the parties hereto may or shall be liable.

"The party of the second part agrees not to institute any suit, or allow any suit to be instituted in its name, against the party of the first part for injuries or death caused to any of its employees hereunder."

On March 20, 1935, during the term of said contract, one Louis (Luigi) Crasto, a longshoreman employed by defendant in the discharge of cargo from plaintiff's vessel "Kano Maru" at New York was seriously injured while so engaged. The accident occurred under the following circumstances. Crasto and several other stevedores employed by defendant were unloading a cargo of pig tin from the hold of the "Kano Maru". Adjoining the tin was a cargo of fertilizer packed in bags which, although originally consigned to New York, had been reconsigned to Baltimore and was not then being handled by the defendant. During the discharging of the tin a number of the bags of fertilizer slid or fell upon Crasto forcing him down upon the tin so that he was severely and permanently injured. He declined to accept compensation under the United States Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and brought an action against the plaintiff. A verdict of $10,000 was brought in by the jury and Crasto's attorney moved to set it aside as inadequate. Judge Thomas denied the motion but set aside the verdict and ordered a new trial on the Court's own motion on the ground that the subject matter of workmen's compensation was improperly brought to the attention of the jury and apparently had been given great weight.

The defendant had been advised of the suit by the plaintiff and notified that the defense would be conducted for its account under the provisions of the contract, but

made no answer. Pending a new trial, settlement negotiations ensued between Crasto's attorneys and the attorneys for the plaintiff herein resulting in plaintiff's settling the case for $15,000. During the negotiations plaintiff's attorneys sought to persuade the defendant to concede its liability under the contract or to consent to the settlement. Defendant, however, denied all liability, although it did offer to put up $5,000 towards a settlement.

The settlement having been consummated plaintiff made a demand upon defendant for reimbursement in the sum of $19,207.20, made up as follows:—$15,000, the amount paid in settlement of Crasto's suit, plus $2,500 legal fees of this plaintiff's attorneys and $1,707.20, disbursements made by plaintiff in defending the Crasto suit. Defendant having declined to pay plaintiff has instituted this suit.

■ Clauses in contracts, leases, etc., whereby one party agrees to indemnify the other against claims for personal injuries have long been upheld by the Courts; and even though the injury was caused by the negligence of the indemnitee, when the language of the contract is unequivocal. Such indemnity clauses are not against public policy or ultra vires. Cacey v. Virginia Ry. Co., 4 Cir., 85 F.2d 976; City of Cleveland v. B. & O. R. Co., 6 Cir., 71 F.2d 89; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35.

■ The defendant does not claim that under the contract it would not be obligated to indemnify the plaintiff for claims due to the latter's negligence arising "in connection with operations to be carried out pursuant to the contract". Defendant's disclaimer of liability is based on the contention that the injuries sustained by Crasto were not suffered "in connection with the operations to be carried out pursuant to this contract" and that, therefore, the indemnity clause of the contract does not apply to Crasto's case. Defendant argues that the contract, in which the indemnity clause is incorporated, was for stevedoring and terminal work to be done "on vessels owned and controlled by the party of the first part, loading and/or discharging at the port of New York"; that defendant did stevedoring work for plaintiff in New York regularly on cargoes consigned to New York and billed plaintiff for the same; that while working plaintiff's ships in New York

defendant only handled cargoes consigned to other ports provided an officer of the ship first authorized the same; that the bags of fertilizer that fell on Crasto were consigned to Baltimore, and were not being handled by the defendant at the time of Crasto's injury; that no authorization had been received from a ship's officer to handle those bags; that the falling of the bags was the proximate cause of Crasto's injuries; and therefore that the injuries sustained by Crasto were not suffered in connection with the operations to be carried on pursuant to the contract between plaintiff and defendant. The conclusion is a "non sequitur" to the premises.

To put it another way—defendant argues that the question of what work Crasto was doing when injured is not determinative of the issue of defendant's liability under the indemnity clause; that the kind of cargo that fell on Crasto is. If any of the pig tin fell on Crasto while he was helping to remove it there would be liability according to defendant's argument, because defendant was under contract to unload the pig tin in the port of New York; but if while Crasto was removing the pig tin here in New York he was injured by the bags of fertilizer that were to be unloaded by some one else in Baltimore, then Crasto's injuries were not suffered "in connection with the operations to be carried out pursuant to" defendant's contract with plaintiff and defendant would not be liable to plaintiff under the indemnity clause. The statement of the proposition exhibits its inherent weakness. Crasto, when injured, was rendering services in the removal of the pig tin and was not working on the fertilizer bags; the removal of the pig tin at the port of New York was one of the operations defendant was to carry out pursuant to its contract with plaintiff; Crasto's injuries were therefore suffered in connection with those operations and were clearly covered by the indemnity clause of defendant's contract.

The Courts have given the phrase "in connection with" a broad interpretation. In the case of Gurney v. Atlantic & Great Western R. Co., 58 N.Y. 358, one of the questions was whether or not a receiver, who was directed to pay out of the earnings of the defendant railway, among other debts and claims, all arrearages "owing to laborers and employees of the said consolidated corporation defendants, for labor and service actually done in connection with that company's railways", should pay

a certain claimant accrued debts for professional services as counsel in important litigations in which the railroad was interested. The Court held that said claim should be paid, Judge Allen, in a concurring opinion, stating (pages 371, 372):—

"The words, 'in connection with that company's railways,' as used and in the relation they bear to the whole clause, are the equivalent of 'in the interest and upon the employment of that company in and about its railways and the operation and management thereof, and all matters connected with, relating to, and growing out of the proper and legitimate business of the company as the possessor and operator of such railways.'"

See, also, Danciger v. Cooley, 248 U.S. 319, 39 S.Ct. 119, 63 L.Ed. 266.

There remains the question whether under all the circumstances the settlement made by plaintiff with Crasto was reasonable, advisable, wise and just and made in good faith. There is not the slightest intimation of collusion between plaintiff and Crasto or their representatives in negotiating and concluding the settlement. There was no bad faith. Further, I am of the opinion that the settlement was advisable and wise considering the experiences and result of the trial of Crasto's claim. The jury had stood six to six on the question of liability on a number of ballots. The verdict of $10,000 was evidently a compromise, indicating that some of the jurors must have been of the opinion that Crasto's injuries justified a much larger verdict.

If we consider the nature and extent of Crasto's undisputed injuries they could have supported a verdict of twice the amount. Crasto's attorney set a figure of $25,000 when negotiations for a settlement were undertaken by him after the $10,000 verdict had been set aside. Crasto's attorney, after the jury rendered its verdict, moved to set it aside as inadequate. That is very impressive proof of the strength of his faith in Crasto's claim and his confidence in a larger recovery on a second trial. The trial judge set the verdict aside for other reasons than inadequacy, because as he stated in his opinion—"It seems clear, in the case at bar, that the subject matter of (workmen's) compensation was an improper element or subject matter for the jury to consider and it also is very clear that this subject matter was given great weight by the jury". The trial judge reached the conclusion also that because

there was a conflict in the medical testimony as to the permanency of some of Crasto's injuries and a dispute also as to the possibility of more serious developments or results from the injuries at some future date, that he could not say that the jury's verdict was inadequate.

Crasto to the date of the trial had been out of employment about a year. He claimed his earnings had averaged about $40 a week. Defendant submits schedules showing he averaged $22 a week. Plaintiff was forty years old. A fair estimate of his medical expense was $500. He had lost his left eye in the accident.

Crasto had suffered a fracture of the facial bones, leaving facial scars and numerous lacerations of the scalp also scarred. Crasto's doctors contended that he suffered a depressed skull fracture at the frontal bone that might some day produce a condition of epilepsy or insanity and that the sight of Crasto's right eye might also become affected. It was also contended for Crasto that he was permanently incapacitated from earning a living. He could not safely go back to stevedoring, working about ships and docks, handling cargo and exposing himself to the dangers incident to that class of work.

Counsel for the defendant contends that Crasto was practically the only witness who testified in support of the charge of negligence against the steamship company, the plaintiff herein. That would be enough to take the case to the jury on a second trial. On the first trial the jury were evenly divided and apparently "hopelessly deadlocked" after deliberating several hours. They returned to the courtroom twice and received further instructions at some length on the second occasion. Their verdict of $10,000 for Crasto was reported after having been out about six hours. Crasto would have at least an even chance of doing as well at a second trial. The expense of a second trial for trial counsel would be about $2,000 and there would be the other usual trial expenditures where a number of witnesses are called and medical experts testify. The attendance of the medical experts at the first trial cost $390. Other witnesses' subpoena fees and an interpreter cost $220. So that the defense at a new trial of Crasto's suit would cost at least $2,500. I think the plaintiff was justified in adding another $2,500 to the amount of the original verdict and the expenses of a second trial and

thus avoid the risk of having a much larger verdict rendered against it on the second trial.

The defendant in the present suit before me called as a witness Mr. Harry S. Austin, who was qualified as an expert on the trial of tort actions in this City. He expressed the opinion that the settlement made by plaintiff was inadvisable and that $5,000 was the most that should have been paid in settlement of Crasto's claim. I received that testimony over an objection by plaintiff's counsel that expert testimony was not admissible on that question since the Court on a consideration of all the facts would be in a position to reach its own conclusions as to the advisability of the settlement and further that the witness' expert opinion stated his conclusion on one of the main issues in this present lawsuit. In receiving the testimony I took it subject to a motion to strike it out and at the end of the case I reserved decision on that motion. I have concluded that such expert testimony is admissible on the question of the advisability or wisdom of the settlement and the motion to strike out that testimony is denied. Van Wycklen v. City of Brooklyn, 118 N.Y. 424, 429, 24 N.E. 179. I have not agreed with the conclusions of the expert and in reaching my decision herein I have used my own best judgment, weighing all the facts and drawing my own conclusions therefrom as to the probable results of a second trial and the advisability of settlement for the sum paid.

 In my opinion the settlement by plaintiff of Crasto's lawsuit for $15,000 was under all the circumstances reasonable, advisable, wise and just. Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 67 N.E. 439. The legal fee, $2,500 charged by attorneys for the present plaintiff for services rendered in opposing Crasto's claim, defending the lawsuit and finally settling it, is fair and reasonable. The disbursements of $1,707.20 made by plaintiff's attorneys in the trial of the Crasto litigation have been examined and found to be proper, especially in the absence of any challenge by this defendant of any item in the list totalling said sum. I therefore have directed a verdict, in the manner stipulated by counsel, for the full amount of $19,-207.20 claimed by the plaintiff herein, on which sum they are entitled to interest from October 23, 1936, together with taxable costs.