**CHICAGO & N. W. R. CO. v. CHICAGO PACKAGED FUEL CO.**

No. 49 C 1339.

United States District Court
N. D. Illinois, E. D.
Aug. 20, 1951.

362

Lowell Hastings, Drennan J. Slater, Chicago, Ill., for plaintiff.

Hinshaw & Culbertson, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

In October, 1947, plaintiff and defendant entered into a written agreement whereby plaintiff licensed defendant to construct, maintain and use a coal hopper under a spur track at the Rosehill Station, Chicago; which was a part of plaintiff's railroad system. The contract contained the following provision for indemnity: "The licensee assumes and agrees to pay for all loss or damage to property and injury to or death of persons, including costs and expenses incident thereto, arising, wholly or in part, from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility or any defects therein or failure thereof, causing same or contributing thereto; and the Licensee shall forever indemnify the Railroad Company against and save harmless from all liability for any such loss, damage, injury and death, including all costs and expenses incident thereto;".

The complaint alleges that the hopper was constructed in accordance with the terms of the contract and that, on February 16, 1948, while it was being used by one Frank Drews for dumping screening coal, an engine belonging to plaintiff struck a truck left standing nearby by Drews, pushing it against him and seriously injuring him. Subsequently, Drews commenced an action against plaintiff, seeking damages for the injuries suffered by him, which action was eventually settled for the sum of $55,000. Both before and after such settlement agreement, plaintiff called upon defendant to indemnify it in accordance with the terms of their licensing agreement. This, the defendant refused to do, and plaintiff paid the settlement amount and commenced the present action. The complaint asserts liability on the part of defendant under the agreement on the ground that the "accident was cause in whole or in part by or in connection with the existence,

maintenance, operation and use of said facility".

Previously, upon motion of defendant, I entered a judgment of dismissal based on the ground that the indemnity provisions of the licensing agreement were not sufficiently explicit to require indemnification where the injuries resulted from plaintiff's own negligence. Upon appeal, the Court of Appeals, 7 Cir., 183 F.2d 630, reversed this judgment and remanded the cause for trial, principally on the authority of Russell, for Use of Continental Cas. Co. v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415. (I feel compelled to comment, however, that the Russell case was not brought to my attention prior to the time the Court of Appeals handed down its decision in the case at bar. Since the Judicial Conference and the Congress of the United States, in the practice of "economy" have deemed it unnecessary to provide district court judges with advance sheets of state court decisions, it should be clear that I was operating at a rather serious disadvantage in applying the law of Illinois, as most recently declared by an appellate court of that State. The net result of such short-sighted economy has been an unnecessary appeal, requiring additional expenditures of time and money on the part of the litigants and the courts involved.) Thereafter, a trial of the cause was had upon the merits, after which the matter was taken under advisement upon the briefs of the parties.

The evidence adduced at the trial reveals that Drews, a truck driver for Zipf Brothers Coal Company, drove his truck to defendant's plant to deliver a load of coal. He confronted a man sitting in the office at defendant's plant and informed him he had a load of coal for the company. Drews then inquired of that man as to whether everything was clear for dumping the coal in the hopper and was assured that it was. The same man then proceeded to start up the machinery for the coal hopper. Drews backed his truck up adjacent to the coal hopper, with the rear wheels some six or eight inches from the rail. The truck was at an angle to the track. Drews placed himself at the left rear of

the truck and began regulating the lever to let the coal drop into the coal hopper. After he had been dumping coal into the hopper for about 20 or 25 minutes, he heard some steam escaping, saw plaintiff's engine and ran only a few steps before the engine struck the truck, pushing it on top of him so that he was pinned underneath the truck's dual wheels.

That Drews suffered serious injuries cannot be doubted. The testimony of the attending physician and the hospital records reveal the following injuries: (1) Right leg amputated seven inches below the knee; (2) Ruptured urethra which will require dilation at periodic intervals during the remainder of his life; (3) Displacement downward and deafness in right ear; (4) Lacrimal duct on inside of right eye torn out, resulting in lacrimation and tearing of the eye and diminished vision; (5) Partial distortion in right side of face; (6) Multiple fractures of pelvis; (7) Fracture of right transverse process of the fifth lumbar vertebra; (8) Temporary paralysis of right side of face, temporary limitation in the use of his right shoulder, and post-operative pneumonia.

Drews was in the Edgewater Hospital for 39 days, and in St. Luke's Hospital for 8 days as a result of the injuries. Several plastic surgery operations were required on his face. Hospital and medical bills were in excess of $5,000. At the time of the accident, Drews was 56 years of age. He had always been a truck driver and he had received only a seventh grade education. His earnings averaged from $75 to $100 per week.

The defendant contends that the controlling issue presented is whether, under the indemnity clause of the licensing agreement, the plaintiff is entitled to indemnity for damages sustained as a result of its own negligence merely because the occurrence, resulting from such negligence, took place at or near the hopper described in the agreement. Defendant's position is untenable in view of the decision of the Appellate Court of Illinois for the First District in the case of Russell, for Use of Continental Cas. Co. v. Shell Oil Co., 1949,

339 Ill.App. 168, 89 N.E.2d 415, 416. There the indemnity agreement provided: "5. Contractor shall hold Shell harmless from any and all claims for injury (including death), to persons (including Contractor's agents and employees), or damage to property (including Contractor's property), resulting from or arising in connection with any of Contractor's operations, shall defend any such claim asserted or suit brought against Shell thereon, and shall pay any judgment against Shell resulting in any such suit; provided, however, that Shell shall have the right, at its option, to participate in any such litigation, without, however, relieving Contractor of its obligations hereunder."

In the Russell case the indemnitor also contended that the agreement should not be construed so as to indemnify the indemnitee against its own negligence. In disposing of this argument, the Appellate Court stated: " * * * It seems clear that the injury to Campbell arose in connection with the 'contractor's operations.' As defendant argues, the contract includes all accidents 'resulting from or arising in connection with any of contractor's operations'; that 'the indemnifying agreement is expressed in clear and explicit language and the intention of the parties is indicated in unequivocal terms.' There is also force in the contention of defendant 'that negligence of either party does not enter into the case, because the injury to the employee (Campbell) resulted from or arose in connection with one of the contractor's operations against which he agreed to hold defendant harmless.' We agree with the opinion of the trial court that the indemnity agreement constituted a complete defense to plaintiff's cause of action."

The indemnity contracts in the Russell case and in the case at bar are so similar that I am forced to conclude that negligence on the part of plaintiff cannot affect the outcome of this cause of action. All that remains for determination, therefore, is (1) Whether the accident arose, wholly or in part, in connection with the existence, operation or use of the coal hopper,

and (2) Whether the settlement of $55,000 was fair and reasonable.

■ That the injury arose at least in part in connection with the use of the hopper can hardly be seriously controverted. At the time of the accident, the hopper machinery was running, Drews was in the process of dumping coal into it, and had been so doing for some 20 or 25 minutes. It is obvious that this was the prime purpose for which the hopper was constructed in the first instance. The very existence of the coal hopper between the tracks rendered it, necessary for Drews to place himself and his truck in a hazardous position in order to avail himself of its use. Patently, it was exactly this type of occurrence that the indemnity agreement was designed to meet, and defendant cannot now escape the consequences of it.

■ In view of the extensive and serious injuries to Drews, enumerated above, I am of the opinion that $55,000 was certainly a fair and reasonable settlement figure. As a matter of fact, when the Drews case was before me in pre-trial conference, I advocated that the railroad settle with him for that amount, and nothing has since been brought to my attention to dissuade me from that judgment.

■ The only question remaining for determination is whether or not plaintiff is entitled to interest on the amount paid to Drews in settlement of his lawsuit. Ch. 74, Ill. Smith-Hurd Ann.Stat. § 2 provides: "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; * * *". It is clear, in the present suit that plaintiff bases its cause of action on an instrument in writing, i. e., the licensing agreement, and the fact that the amount due is undetermined in the instrument will not defeat its right to interest thereon. This is made plain in the case of Hamilton Watch Co. v. George W. Borg Corp., 1942, 317 Ill.App. 271, 46 N.E.2d 112, 118, where defendant agreed

in writing to reimburse plaintiff in the event the United States Customs imposed an import duty on hair springs. The Court stated: " * * * However, in the case at bar plaintiff in May 1938, made a demand on defendant for the sum of $68,530.29. This was before the complaint was filed on November 16, 1938, and defendant could have tendered that definite sum and thus have been released from liability for any interest thereon, but instead it chose to ignore plaintiff's demand. Under the agreement of the parties defendant's obligations to reimburse plaintiff became definite and fixed when plaintiff paid the government. Of course the defendant took the position that it was not obligated for any sum whatsoever, but the plain import of the contract did not warrant such a construction, and the mere fact that defendant interposed a defense does not absolve it from the obligation to pay interest. In numerous cases cited by plaintiff defenses were made in apparent good faith. In Smith v. Gray, 316 Ill. 488, 147 N.E. 459, 464, the court, after reviewing the authorities, held that the ʿcases are to the effect that upon all such instruments in writing, including building contracts, interest is payable after the money becomes due according to the terms of the contract and after it has been substantially performed, even where the amount due is not stated in the writing and is undetermined. If the plaintiff * * * is entitled to recover under the facts as finally established, there can be no question of his right to recover interest from the time of the demand on defendant and the wrongful refusal of the defendant to make settlement. * * * "

The case at bar is similar in all respects and plaintiff is entitled to interest from the time of payment of the settlement, since payment and demand were concurrent in point of time.

For the foregoing reasons, judgment will enter in favor of plaintiff in the amount of $55,000, plus interest at the rate of 5% per annum from August 26, 1949.