**CHICAGO & N. W. RY. CO. v. CHICAGO PACKAGED FUEL CO.**

No. 10503.

United States Court of Appeals, Seventh Circuit.

March 24, 1952.

Rehearing Denied April 23, 1952.

468

Joseph H. Hinshaw, Oswell G. Treadway, Chicago, Ill., for appellant.

Lowell Hastings, Drennan J. Slater and Edgar Vanneman, Jr., all of Chicago, Ill., for appellee.

Before KERNER, LINDLEY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, Chicago and North Western Railroad Company, a Wisconsin corporation, sued defendant for reimbursement of $55,000 paid to one Frank Drews under the provisions of a written contract whereby plaintiff licensed defendant to construct, maintain and use a coal hopper under a spur track which was a part of plaintiff's railroad running across defendant's premises at Chicago.

This is the second appearance of this case. See 7 Cir., 183 F.2d 630. In that appeal we held that a serious question of law was presented as to the scope of the indemnity; that the question of negligence alone was not determinative of the issues; and that the court erred in dismissing the complaint in that it did not appear to a certainty that plaintiff would not be entitled to relief under any state of facts which it might be able to prove on the hearing.

The complaint asserted liability on the part of defendant on the ground that the accident was caused in whole or in part by or in connection with the existence, maintenance, operation and use of the coal hopper. Defendant answered denying liability, and asserted that the contract was not intended to cover a situation where the railroad was in any way negligent; that the only indemnification intended was in the case where the proximate cause of the accident was either a defect in the hopper or the negligence of the defendant. Upon remand the case was tried by the court without a jury. The trial judge made findings of fact upon which he rendered his conclusions of law and entered a judgment for plaintiff. D.C., 99 F.Supp. 361.

The record discloses that plaintiff licensed defendant to place a hopper under a spur track crossing its premises. This was done in accordance with the plans suggested and approved by plaintiff. The hopper was installed and was in operation when on February 16, 1948, Drews, an employee of Zipf Brothers Coal Company, delivered a load of coal to defendant's plant and backed his truck up to the hopper, stopping the rear wheels 6 or 8 inches outside the nearest rail of the track. The bed of the truck was 10 feet long and 5 feet high and at least 3 feet above the ground. The front end of the truck was 12 feet above the ground. After the truck was raised, Drews went to the left rear end of the truck, a foot or so outside of the rails, and, facing the truck which was between him and the approaching engine, opened a chute which, when the machinery in the coal hopper was started, allowed the coal to run from the truck. After the truck had been standing in this position for 20 minutes and while Drews was dumping the coal into the hopper, an engine operated by plaintiff approached from the

southwest, collided with the truck and pushed it against Drews, pinning him under the wheels of the truck. The truck, while standing at the hopper, was visible from the direction from which the engine was moving for more than 200 feet. Drews testified that he heard no bell or whistle. He did, however, see the engine, but then it was so close he was unable to get away.

The record does not disclose any evidence, or any evidence from which it could be inferred, that the use of the hopper increased the hazards of railroading, or that the existence of the hopper between the tracks made it necessary for Drews to place himself and the truck in a dangerous position, and there was no evidence that the hopper was in any way defective or improperly used.

It is undisputed that Drews sued plaintiff to recover damages for his injuries, notice of which was given to defendant in this case, and that a demand was made upon defendant that it take over the defense on the ground that it had agreed so to do under the indemnity clause of the contract, but defendant disclaimed liability. Thereafter plaintiff settled with Drews and paid him the $55,000. No question is raised as to the seriousness of Drews' injuries or that the settlement was not fair, wise or reasonable, and there can be no question but that the accident was due to the negligence of plaintiff.

Contained in the trial court's findings are these facts: In order for Drews to avail himself of the use of the hopper it was necessary for him to place himself and his truck in a hazardous position; at the time of the accident, the hopper was running and Drews was in the process of dumping coal into the hopper and had been doing so for some 20 or 25 minutes; the injury to Drews arose at least in part in connection with the use of the hopper. The court concluded as a matter of law that it was exactly this kind of occurrence that the indemnity agreement was designed to meet.

The indemnity provision of the contract, prepared by plaintiff, provided: "The Licensee assumes and agrees to pay for all loss or damage to property and injury to or death of persons, including costs and expenses incident thereto, arising, wholly or in part, from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility or any defect therein or failure thereof, causing same or contributing thereto; and the Licensee shall forever indemnify the Railway Company against and save it harmless from all liability for any such loss, damage, injury and death, including all costs and expenses incident thereto."

The question is whether the indemnity clause requires defendant to indemnify plaintiff for the damages sustained. This we must decide from the terms of the contract and the facts.

Defendant asserts that the injuries sustained by Drews were in no way connected with the contract, and that the proximate cause of the accident was neither a defect in the hopper nor the negligence of defendant. It claims that it did not agree to save plaintiff harmless from liability for injuries to persons due to plaintiff's own negligence, and that contracts of indemnity are not to be construed to cover losses to the indemnitee caused by his own negligence unless such an intention is expressed in clear and unequivocal terms, and it makes the point that here the proximate cause of Drews' injuries was plaintiff's negligence.

It is conceded that the parties could enter into a contract eliminating liability for future negligence. However, such contracts are not favored, and when entered into will be strictly construed against the party relying thereon. Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 180 F.2d 79, 84; North American Ry. Const. Co. v. Cincinnati Traction Co., 7 Cir., 172 F. 214, 216. But the courts are not in agreement as to what language in such contracts will exculpate one of the parties from liability for his future negligence. Some hold that general words are not sufficient and that to accomplish this, specific reference to negligence must be made or the intent shown by unequivocal terms. Southern Pacific Co. v. Layman, 173 Or. 275, 145 P.2d 295; Mostyn v. Delaware, L. & W. R.

Co., 2 Cir., 160 F.2d 15, 18; Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36, 2 N.E.2d 35, 37; Marshall v. Maryland, D. & V. Ry. Co., 1 W.W.Harr. 170, 112 A. 526; New York Central R. Co. v. Chicago & E. I. R. Co., 360 Mo. 885, 231 S.W.2d 174; and Southern Bell T. & T. Co. v. Mayor, 5 Cir., 74 F.2d 983. Others state that the intent must be shown by clear and explicit language. Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 127 F.2d 128, 133; and Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347.

■■ Courts are not authorized to make contracts for the parties but must construe them as written. A contract must be given a fair and reasonable interpretation, and from the entire contract, as expressed in the language used and considered in the light of the circumstances under which it was made, the court must ascertain the intent of the parties.

■ In the instant case the contract was made and was to be performed in Illinois, and must be interpreted by Illinois law. The cases cited above are in accord with the Illinois law, as was stated in Westinghouse Electric Elevator Co. v. LaSalle Monroe Bldg. Corp., 395 Ill. 429, 433, 70 N.E.2d 604, in which the court held that an indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language in the contract.

In support of its contentions, defendant calls attention to the fact that there is not a word in the indemnifying clause which indicates that it undertook to indemnify plaintiff against any loss caused by plaintiff's own misconduct, and that Drews' injuries were in no way connected with the use of the hopper and did not arise from its use, but were caused solely by plaintiff's negligence.

On the other hand, plaintiff insists that in construing an indemnity contract, words cannot be read into it for the purpose of defeating the indemnity or the intention of the parties as expressed by the language of the contract; its meaning must be determined from the words used, Westinghouse Co. v. LaSalle Monroe Bldg. Corp., 395 Ill. 429, 432, 70 N.E.2d 604; and when the contract including the words "wholly or in part" and "in connection with" is fairly and reasonably interpreted, it leads to the conclusion "that negligence of either party does not enter into the case," Russell v. Shell Oil Co., 339 Ill.App. 168, 172, 89 N.E.2d 415, 417. It argues that it needs no indemnification for someone else's negligence, and that the only conceivable need or purpose for the indemnity is in a situation where its negligence is charged; that the words "wholly or in part" and "arising in connection with" clearly indicate that the parties did not intend to confine the indemnification to "proximate cause" situations. In support of its position it cites among other cases those appearing in the footnote.[1] We have examined these cases and do not believe they are analogous to the instant case. They contain broad and comprehensive language evidencing a release or discharge from negligence, or they are distinguishable on the facts. It will not be necessary to review all of them.

In Southern Pacific Co. v. Fellows, 22 Cal.App.2d 87, 71 P.2d 75, the railroad company entered into a contract with Fellows in and by which Fellows undertook the construction of a locomotive erecting shop. The contract contained an indemnity clause by which Fellows agreed to indemnify and save the railroad harmless from and against.

---

1. City of Cleveland v. Baltimore & O. R. Co., 6 Cir., 71 F.2d 89; Northern Pac. Ry. Co. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226; J. V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 154 F.2d 265; Kokusai Kisen Kabushiki Kaisha v. Columbia S. Co., D.C., 23 F.Supp. 403, affirmed, 2 Cir., 100 F.2d 1016; Southern Pac. Co. v. Fellows, 22 Cal.App.2d 87, 71 P.2d 75; John P. Gorman Coal Co. v. Louisville & N. R. Co., 213 Ky. 551, 281 S.W. 487; National Transit Co. v. Davis, 3 Cir., 6 F.2d 729; Watkins v. Baltimore & O. R. Co., D.C., 29 F.Supp. 700; Deep Vein Coal Co. v. Chicago & E. I. Ry. Co., 7 Cir., 71 F.2d 963; and Russell v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415.

"any and all claims, loss, damage, injury and liability howsoever the same may be caused, resulting directly or indirectly from work covered by this agreement." During the construction of the shop, one of Fellows' employees was injured. He sued the railroad and recovered a judgment which the railroad paid, and it sued to be reimbursed. The court held that the agreement was so sweeping and all-embracing in its terms that, although it did not contain an express stipulation indemnifying the railroad against liability caused by its own negligence, it accomplished the same purpose. Such is not the fact in our case.

In Russell v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415, Russell, a painting contractor, entered into a contract to paint light poles for the oil company. One of Russell's employees, while endeavoring to paint one of the poles, fell and was injured. Russell, under the Illinois Compensation Act, Ill.Rev.Stat.1951, c. 48, § 138.1 et seq., paid him his compensation and medical expenses, and then sued to recover the amount paid, claiming that the oil company's negligence was the cause of the injury. The contract provided that Russell would hold Shell harmless from any and all claims for injury to persons, including Russell's employees, resulting from or arising in connection with any of Russell's operations. The court held that Russell had agreed to indemnify Shell against all accidents resulting from or arising in connection with any of the contractor's operations, and since it was clear that the injury resulted from the work being performed, Shell was not liable. Here our contract is not a contract for work to be performed for plaintiff, and the injuries sustained are in no way connected with the contract. They arose solely out of the negligence of plaintiff.

In City of Cleveland v. Baltimore & O. R. Co., 6 Cir., 71 F.2d 89, the city planned the construction of a sewer and let the work to a contractor. The sewer was to pass under the railroad's right of way. The parties having in mind the obligation of the railroad to support its tracks during the construction work, the city agreed to indemnify the railroad and to save it free and harmless from all damages to persons by reason

of or in any connection with the construction of the sewer by the city or its contractor. While the sewer was being constructed the railroad negligently injured a laborer employed by the contractor. The railroad settled his claim and demanded indemnity from the city. The court held that since the injury occurred during the construction of the sewer, the railroad was entitled to the indemnity.

In J. V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 154 F.2d 265, the Transfer company did a general cartage business by means of motor trucks. It entered into a contract with the railroad in which the Transfer company agreed to transport freight between the station of the railroad and the places of business of the shippers. By the contract the Transfer company agreed to save harmless and indemnify the railroad against injury to persons, in the event an attempt should be made to hold the railroad liable therefor, in connection with the Transfer company's business or operations thereunder. An employee of the Transfer company, while engaged in transferring a casting from the railroad station to his truck, was injured through the negligence of the railroad. The court held that it was plain that the Transfer company undertook to indemnify the railroad against any claims which grew out of the handling and transportation of the freight. No such clause appears in the contract here involved.

In John P. Gorman Coal Co. v. Louisville & N. R. Co., 213 Ky. 551, 281 S.W. 487, the railroad and the coal company entered into an agreement for the construction of a switch track into the coal company's property. The agreement contained an indemnity clause and an agreement by which the coal company agreed to maintain and to keep the tracks free from obstruction, and to hold the railroad harmless from the claims and demands of all persons on account of any damages or injuries caused directly or indirectly by the existence, location or condition of any obstruction on the track. The coal company violated the contract by placing a push car so close to the spur track that a string of coal cars collided with it, resulting in a derail-

ment and causing injury to the conductor and brakeman. Because of the violation, the court held the railroad was entitled to indemnity. In our case the hopper had been installed in accordance with the agreement and there was no violation of the agreement. It is also true that in National Transit Co. v. Davis, 3 Cir., 6 F.2d 729, the court held that the indemnifying clause was not limited to claims where the railroad was blameless. There the railroad permitted Transit, engaged in transporting oil by pipe line, to lay its pipe lines along the railroad's right of way. By the contract Transit agreed to indemnify the railroad for claims in any manner arising out of the laying, maintenance, use or existence of the pipe. Oil escaped from the pipe onto the track and was set on fire by a switch engine, causing damage to third parties. The court held that the escaped oil was the real cause of the damage sustained by the third parties. Here Drews' injuries were in no manner whatsoever connected with the operation of the hopper, hence the case is not applicable.

■ It is plain that exemption from liability for negligence is not expressed in the contract here involved, which provides that defendant assumed to pay all loss or damage and injury to persons, arising, wholly or in part, from or in connection with the existence, maintenance, operation or use of the hopper, causing same or contributing thereto, nor is the language so clear, explicit and unequivocal as to compel the conclusion that the parties intended to exonerate plaintiff from the consequences of its own negligence. Neither can it be said that the existence, operation or use of the hopper, under the facts here appearing, caused or contributed to Drews' injuries. It follows that the judgment of the District Court must be reversed. It is so ordered.

LINDLEY, Circuit Judge (dissenting).

The District Court found that in order for Drews to avail himself of the use of the hopper it was necessary for him to place himself and his truck in a hazardous position; that at the time of the accident, the hopper was running and Drews was in the process of dumping coal into the hopper and

had been doing so for some 20 or 25 minutes and that the injury to Drews arose, at least in part, in connection with the use of the hopper.

This finding was based upon substantial evidence and was not "clearly erroneous." The contract wherein the railroad company licensed defendant to build the hopper on railroad property, provided, as consideration therefor, that defendant would indemnify and save harmless the licensor from all "loss or damage to property and injury to or death of persons, including costs and expenses incident thereto, arising, *wholly or in part*, from or in connection with the *existence, construction, operation, use* or removal of *said facility* or any defect therein or failure thereof, causing same or contributing thereto." (Emphasis supplied.) It follows I think, that the District Court's conclusion that "it was exactly this kind of occurrence that the indemnity agreement was designed to meet," was sound as a matter of law.

I would affirm the judgment.