The PENNSYLVANIA RAILROAD COMPANY, a corporation

v.

INDIANA HARBOR BELT RAILROAD COMPANY, a corporation.

No. 56 C 1646.

United States District Court
N. D. Illinois.

Feb. 11, 1958.

---

1. See Res Ipsa Loquitur Doctrine in Pennsylvania, 85 Pa.Law Rev. 212.

Robert H. Bierma, Edward J. Fleming, O. William Olson, Jr., Chicago, Ill., for plaintiff.

Marvin A. Jersild, Charles I. Hopkins, Jr., Chicago, Ill., for defendant.

JULIUS J. HOFFMAN, District Judge.

The Pennsylvania Railroad Company has instituted this action against the Indiana Harbor Belt Railroad Company for recovery under the indemnity or contribution provisions of an agreement for the parties' joint use of certain railroad tracks and right of way owned by the plaintiff in the City of Chicago. The matter has been tried before the court sitting without a jury, and counsel have aided the court by the preparation of comprehensive briefs addressed to the issues raised by the pleadings and evidence.

The plaintiff seeks to recover all or part of the amount expended by it in the defense and settlement of the claim of Miriam McGregor Uzdzinski arising out of an accident which occurred on September 25, 1950, at the crossing of the plaintiff's tracks and 106th Street in Chicago. From the admissions, stipulations, and evidence introduced, it appears that the crossing in question was a part of a short section of the railroad system formerly owned by the Calumet River Railway Company. On June 6, 1901, the Calumet River Railway Company entered into an agreement in the nature of a lease and described as a joint facility agreement, granting to the Michigan Central Railroad Company and the Chicago Junction Railway Company the right to use this section of the railroad and its appurtenances jointly with the owner. The plaintiff has succeeded to the rights of the owner under this agreement, and the defendant has assumed the position of the two lessee railroads.

While this agreement remained in force, and on September 25, 1950, one of the defendant's trains, consisting of a locomotive and 28 to 30 cars, was proceeding in a northerly direction over the jointly-used tracks. As this train reached a point approximately 150 feet south of the intersection of the track with 106th Street in Chicago, the crossing watchman employed by the plaintiff commenced to lower the crossing gates to bar traffic in the street. One of the descending gates struck Mrs. Uzdzinski, who was riding on the rear seat of a motorcycle driven by a companion. She brought suit against the plaintiff in the Superior Court of Cook County, Illinois, and the plaintiff, relying upon the indemnity provisions of the joint facility agreement, tendered the defense of the action to the defendant here. The tender was refused, the plaintiff here defended, and at the trial Mrs. Uzdzinski recovered a verdict and judgment in the sum of $150,000 for her injuries. Pending appeal, a compromise was effected and, after the remittitur of $100,000, a final judgment for $50,000 was entered in Mrs. Uzdzinski's favor in the Appellate Court.

The plaintiff now seeks to recover the amount of that award, along with expenses and costs incurred in the defense and settlement of the suit, in the total amount of $68,934.01, under the terms of the joint facility agreement. The defense rests upon the interpretation of that agreement.

The plaintiff relies upon three provisions of the contract to support its claim for indemnity or contribution. For convenience, the relevant clauses will be separately considered.

## I.

Section 8 of the agreement in issue deals with the subject of the parties' respective liabilities for injury to persons or property. The first sentence of that section provides:

"The parties of the second and third parts [defendant's predecessors], each respectively, assume all risk of loss, damage, or expense that may be inflicted upon them or either of them or in respect to their employees, passengers, or the property of other parties under their control, arising from any act or omission on the part of any officer, agent, or employe of the first party [plaintiff] or the employes of the second and third parties while on the track system, a right of joint use of which is hereby demised, and shall and will during the continuance of this agreement, save and keep the first party harmless from any and all claims, demands, loss, or damage on account thereof."

The purport of this clause is to relieve the lessor from liability to its lessee, or to persons or property brought onto the premises in the course of the lessee's operations. In other words, when the defendant's train, with its passengers, employees, baggage, and freight, enters upon the plaintiff's tracks, the defendant assumes the risk, whether injury is caused by the employees of the plaintiff or defendant. The provision would cover an injury like that involved in United States Steel Corp. v. Emerson-Comstock Co., D.C. N.D.Ill.1956, 141 F.Supp. 143, but it has no application here. The claimant, Mrs. Uzdzinski, was neither a passenger nor an employee of the defendant, and her claim against the plaintiff falls outside the scope of this exculpatory clause. The plain words of the agreement admit of no other reasonable intendment.

Beyond this, the plaintiff argues earnestly that the quoted provision imposes liability for all "loss, damage, or expense that may be inflicted upon" the *plaintiff* by any act or omission of either the plaintiff's or defendant's employees. We need not stop to consider whether an agreement such as this could reasonably be construed as casting upon the defendant a duty to indemnify for injuries suffered by the plaintiff at the hands of its own employees, or whether a loss incurred by way of payment of the claim of an outsider could be brought within the meaning of the words employed. The sentence speaks only of losses inflicted upon "the parties of the second and third parts," "or either of them." The plaintiff, as party of the first part, is not included; the word "either" embraces two, not three.

This sentence of the agreement bears but a single reasonable meaning. In the absence of ambiguity, extrinsic evidence as an aid to interpretation may not properly be considered. The evidence offered by the plaintiff in an effort to show that the parties in their dealings have construed the contract differently must therefore be omitted from the consideration of this point. Finch v. Theiss, 1915, 267 Ill. 65, 107 N.E. 898; Young v. Illinois Athletic Club, 1928, 310 Ill. 75, 141 N.E. 369, 30 A.L.R. 985. It follows that this branch of plaintiff's claim for indemnity is without merit.

## II.

The second basis for the plaintiff's claim to indemnity is the second sentence of section 8 of the joint facility agreement. That sentence provides:

"* * * And the parties of the second and third parts, each respectively, hereby further assume all risk and all liability for injury or damage to persons, or to their own property, or to property of third parties caused by their trains, cars, or locomotives, by reason of or growing out of all defects in the right of way, road-bed, track, or tracks, bridges, or culverts, or insufficiency of the fences, or a lack of fences along the right of way of the railway and tracks covered by this

indenture, or the failure to erect or build signboards or gates, or cattle guards, or other protections at highway or street crossings in compliance with law, or the failure to erect interlocking systems or other safety appliances at railway crossings, connections, or intersections, or the erection or construction of fences, sign-boards, gates, cattle guards, interlocking systems or other safety appliances or protections which do not fully conform to law, and they and each of them shall and will during the continuance of this agreement save and keep the party of the first part harmless from any and all claims, demands, loss or damage on account thereof; but if the party of the first part shall fail to repair defects in the tracks or bridges within a reasonable time after notice in writing so to do, specifying such defects, or shall fail to build or erect such fences, sign-boards, gates and cattle guards, interlocking systems or other safety appliances as may be required by law, or to repair the same if needing repairs, within a reasonable time after notice in writing so to do, specifying the places where such fences, sign-boards, gates, cattle guards, interlocking systems or other safety appliances should be erected or repairs thereon are needed, or the changes necessary to make the same conform to the requirements of law, the parties of the second and third parts may repair such defects in the track or bridges, and erect such fences, sign-boards, gates, cattle guards, interlocking systems or other safety appliances or repair the same, or change the same so as to conform to law, at the cost and expense of the first party, subject to the provisions herein contained as to the division of the cost and expense of maintenance, renewals, and repairs."

In the interpretation of this provision, the crucial inquiry is the meaning of the requirement that the injury or damage must be "caused by their [now the defendant's] trains, cars, or locomotives." The defendant argues that the injury to Mrs. Uzdzinski was caused solely by the crossing gate operated by the plaintiff's watchman, that she neither was struck by nor collided with any part of the defendant's train, and that this sentence has no application to this case. To avoid the force of this contention, the plaintiff argues that the phrase "caused by their trains," etc., should be read as meaning merely "while their trains are on the track system." Perhaps such an agreement, had it been made, would have afforded a reasonable allocation of the risks of operation. But it is not for this court to write the agreement it might believe the parties should have entered into. The contract which the parties made and accepted is controlling. Olson v. Rossetter, 1948, 399 Ill. 232, 238, 77 N.E.2d 652, 655; Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 1952, 195 F.2d 467, 470.

Examined in the light of the fair and reasonable meaning of the writing considered as a whole, the sentence does not make the defendant a general liability insurer for the plaintiff with respect to all injury or damage which may occur from whatever source. Its import is more narrow and more precise. The clause constitutes rather a declaration that in obtaining the right to use this right of way, the defendant must take it as he finds it, and that a loss caused by the defendant's train cannot be cast upon the plaintiff because of any defect or shortcoming in the leased premises.

Still the defendant's duty to indemnify arises only when the injury has been "caused" by its trains. To meet this requirement, plaintiff relies upon the stipulation of the parties that one of the crew members on the defendant's train would, if called, testify that the engine bell was not rung and the whistle not sounded as the train approached the crossing. It is claimed that these omissions "caused" the injury to Mrs. Uzdzinski, since an audible warning of the approaching train would have given

warning, too, that the gates would be lowered. It was also stipulated, however, that another member of the crew of defendant's train would testify, if called as a witness, that the warning bell on the watchman's gate house, specifically designed to warn travelers that the gates will be lowered, was rung. Neither witness appeared before the court, and the court has no basis for determining credibility. Taking the stipulated testimony of both crewmen to be true, it does not appear by a preponderance of the evidence that the breach of any supposed duty of the defendant's train crew to give warning that the gates would be closed caused the injuries for which Mrs. Uzdzinski recovered. A direct, audible warning of the closing gates had been given by the plaintiff's employee responsible for doing so. Whether an added warning of a visible approaching train, giving inferential warning of lowering gates, would have served any useful purpose lies in the realm of conjecture.

██ Upon these findings, the factual situation on the question of cause discloses that the defendant's train was related to the injury only by reason of the fact that the presence of the train was the occasion for the plaintiff's watchman to lower the gates. The direct physical cause of the injury was the claimant's violent contact with the crossing gate. The proximate cause of the injury was the plaintiff's negligence, whether in providing crossing protection equipment not in compliance with law, in allowing the gate to fall into disrepair, or in its employee's lowering the gate without warning. In any event, the injury was not "caused by [the defendant's] train" in the usual and reasonable meaning of those terms. The train was nearly stationary at a distance of 150 feet from the place of the injury. No part of the train, locomotive, or cars ever came into contact with the crossing gates, the motorcycle, the driver, or Mrs. Uzdzinski. No negligent act of the defendant's train crew contributed to the injury. In these circumstances, it does not appear that the train "caused" the injury, within the meaning of that term intended by the parties in the light of the circumstances surrounding their agreement. In ordinary usage, a cause is distinguished from a condition or occasion. "The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act." Merlo v. Public Service Co., 1942, 381 Ill. 300, at pages 316–317, 45 N.E.2d 665, at page 675. See Storen v. City of Chicago, 1940, 373 Ill. 530, 533, 27 N.E.2d 53, 55.

██ No public policy forbids the plaintiff from shifting the risk of loss from its own negligence or that of its employees onto the defendant by mutual assent. United States Steel Corp. v. Emerson-Comstock Co., D.C.N.D.Ill. 1956, 141 F.Supp. 143. But it will not lightly be assumed that the defendant took upon itself the burden of answering for the negligence of the plaintiff and its employees over whom the defendant had no control, in occurrences not involving the defendant's trains. A contract will not be construed to indemnify a party against his own misconduct without a clear warrant in the language employed. Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 1952, 195 F.2d 467, 472. In that case the defendant had obtained from the plaintiff railway a license to install and maintain a coal hopper under the tracks on plaintiff's right of way. By the licensing agreement, the defendant assumed all risk of loss "arising, wholly or in part, from or in connection with the existence * * * or" use of the facilities under the agreement. A truck driver was injured while dumping coal from his truck into this hopper, when plaintiff's locomotive collided with his truck. Despite the broad language previously quoted, the Court of Appeals for this Circuit held that the defendant's use of the right of way, in the installation and use of the coal hopper, had not caused or contributed to the injuries, and that the plaintiff was accordingly not entitled to indemnity. The stringent and unquali-

fied requirement of the contract here in issue—that the injury be "caused" by the defendant's train—certainly confers no broader right of indemnity.

The restrictive language of causation here employed stands in contrast to the broad terms of the indemnity agreement enforced in Alabama Great Southern R. Co. v. Louisville & Nashville R. Co., 5 Cir., 1955, 224 F.2d 1, 2, 50 A.L.R.2d 1302. There, as a condition to allowing the defendant railroad company to use the tracks of the plaintiff, the defendant was obliged to indemnify the plaintiff from all losses incurred by reason of the defendant's use of the tracks "in whatever manner the same may be caused or occasioned." The Court held the quoted language sufficiently broad to require the defendant to indemnify the plaintiff for losses resulting from a collision of the plaintiff's and defendant's trains, caused by the ordinary negligence of the plaintiff. The plaintiff's reliance upon this decision is misplaced not only because the contractual provision relating to cause is broader, but also because the fact that the defendant's train collided with the plaintiff's constitutes actual causation which is absent here.

No direct authority for the interpretation of the words here employed has been found. But on the basis of the general principles of construction laid down by these and other cases, it appears that under the facts presented the injury cannot be said to have been "caused" by the defendant's train within the meaning of the parties' agreement.

 Another defect in the plaintiff's claim prevents recovery under the indemnity provisions of the second sentence of Section 8 set out above. The injury must not only be caused by the defendant's train; it must also be injury or damage "by reason or growing out of" specified defects in the right of way and appurtenances. The claim of Mrs. Uzdzinski as submitted to the jury was predicated, alternatively, upon negligence consisting, first, in failure to erect safe and adequate gates, second, in allowing the gate to fall into dangerous disrepair, and third, in the negligence of the plaintiff's employees in operating the gate and failing to give adequate warning. It is unnecessary to decide whether injuries resulting from the second claim of negligence, the alleged failure to repair, would fall within the provisions of this clause, since it is clear that the third specification, of negligent operation, is beyond its scope. No evidence has been produced to show which of the three forms of negligence was the cause of the injury. In the absence of such evidence, the plaintiff has failed to discharge its burden of showing by a preponderance of the evidence that Mrs. Uzdzinski suffered an injury "arising or growing out of" the defects enumerated in the indemnification clause.

 In view of the ambiguity of this second sentence of Section 8 of the agreement, the court received and considered a substantial volume of extrinsic evidence offered by the plaintiff in an effort to show that the parties, by their dealings under the agreement, had established an interpretation of the clause. It is the settled law of Illinois, controlling here, that the parties to a contract may, by their performance, clarify an ambiguity by revealing their understanding of its import. Hammer v. Sanders, 1956, 8 Ill.2d 414, 134 N.E.2d 509. But the evidence received falls short of the plaintiff's claims for it. The testimony related to some six accidents occurring upon joint facilities of the plaintiff and defendant railroads and involving the indemnity provisions here in issue or similar contracts. It appears that these have been the only occasions for the application of the indemnity clause since the agreement was made in 1901.

At the outset, it may be doubted whether six interpretations in practice during the course of fifty years should suffice to establish a settled understanding between the parties as to the meaning of the contract. Aside from its paucity, however, the evidence is inconclusive for other reasons. In four of the six instances covered by the evidence, a train of the defendant had been involved

in a collision with a motor vehicle. This fact alone destroys the usefulness of the cases as an aid in interpreting the requirement that the injury be "caused" by the defendant's train, as applied to this case where the defendant's train was no more than the occasion for the lowering of gates. In the fifth instance, the claimant was injured when he collided with the crossing gates, but no claim was ever presented and no money was ever paid. Whether the defendant would have assumed the defense and paid a judgment against the plaintiff, had a judgment been rendered, is wholly conjectural. The Claims Departments of both railroads conducted investigations, but their conduct is as consistent with an effort to ascertain the facts relevant to the question of which was obliged to defend as with a clear admission of a duty to indemnify. The sixth instance involved injury to an employee of the plaintiff, and the defendant admitted liability for partial contribution and not for complete indemnity. It is useless, therefore, as an aid to understanding this indemnity clause.

Although the court continues to be of the opinion that this extrinsic evidence was properly received over the defendant's objection, it is also the court's opinion that the evidence fails to establish a practical construction of the words in issue. It likewise fails to bring the plaintiff's claim within the scope of the indemnity clause.

### III.

As an alternative claim, the plaintiff seeks the recovery of a major portion of the amount expended under the payment terms of the joint facility agreement, whereby the costs of operation and maintenance of the jointly-used facilities are apportioned in accordance with the relative monthly mileage of the parties' trains on the joint tracks. It is stipulated that the defendant's allocated portion of these costs, for the month in which Mrs. Uzdzinski was injured, was 58.03 per cent. The expense of personal injury claims, according to the plaintiff's argument, is a cost of operating a railroad system. It follows, plaintiff asserts, that the defendant is obliged by the agreement to contribute 58.03 per cent. of the total expended, or $40,040.

The plaintiff is on firm ground in its position that the expenses of defending and discharging personal injury claims is a cost of operating a railroad system as a whole. But the clause in issue does not contemplate the division of all costs of the system. It provides:

"3. In addition to rental as above provided, each of the companies agrees to pay its proportion of the cost of operation and maintenance of said demised railroad and appurtenances; taxes and assessments on the demised property to be regarded as part of the expenses of operation and maintenance. The rental and expenses so to be paid by all parties using the demised railroad and appurtenances shall be paid by each party in the proportion that the car mileage of each party using the demised property bears to the car mileage of all parties using the demised property (it being understood that each engine shall count as two cars), and payment of said rental and expenses shall be made monthly upon draft of proper accounting officer, on or before the twenty-fifth day of each month succeeding the month for which bills for the proper proportion of said rental and of said expenses shall be presented."

Under this agreement the cost to be apportioned is not the cost of operation of the railroad system; it is rather the "cost of operation and maintenance of said demised railroad and appurtenances." The cost of operating trains and moving rolling stock over the section of track is not to be divided. The specific enumeration of taxes and assessments on the demised property would have been superfluous had the parties intended a general sharing of *all* costs of the railroad system. In practice, under this clause, the parties have apportioned the expenses of upkeep of the tracks, road-

bed, and incidental equipment, the wages paid to employees (including the watchman for the crossing gate involved) operating this incidental equipment, and incidental expenditures for electricity, coal, oil, street lighting, and the like. In one instance, the defendant paid some $600 as its portion of a settlement with the widow of one of plaintiff's employees who had been serving as a crossing watchman on the jointly used track and who had been killed in the course of employment by the train of a third railroad. It is not clear, however, whether the defendant's payment was intended as a concession of liability or simply as the compromise of a disputed claim. Even if the payment should be regarded as an unqualified concession, the defendant's consent to share the compensation paid to employees injured while operating the facilities of the system, whose wages are divided as a matter of course under the contract, does not constitute a binding interpretation between the parties that the contract contemplates the sharing of awards made for personal injuries of outsiders.

 If this paragraph of the agreement were construed to require the proportionate sharing of the costs of personal injury claims, the detailed provisions for indemnity against the plaintiff's liability would have been unnecessary. If the joint facility agreement is viewed as a whole, and if each of its provisions is given effect according to its reasonable intendment, the expense of the Uzdzinski claim is not a "cost of operation and maintenance" of the leased property.

For reasons previously stated, the court sustained at trial the defendant's motion to dismiss the claim denominated by plaintiff as "Additional Count III."

Judgment will accordingly be entered for the defendant upon all counts.

The court's findings of fact and conclusions of law appear in the foregoing memorandum of decision in conformity with the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.