The **PENNSYLVANIA RAILROAD COMPANY**, a Pennsylvania corporation, Plaintiff-Appellant,

v.

**INDIANA HARBOR BELT RAILROAD COMPANY**, an Indiana corporation, Defendant-Appellee.

No. 12352.

United States Court of Appeals Seventh Circuit.

Dec. 17, 1958.

Robert H. Bierma, Edward J. Fleming, Chicago, Ill., for appellant.

Charles I. Hopkins, Jr., Marvin A. Jersild, Chicago, Ill., for appellee.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

The Pennsylvania Railroad Company, plaintiff, sued Indiana Harbor Belt Railroad Company, defendant, under the indemnity and contribution provisions of an agreement between them for the joint use of certain tracks and right of way belonging to plaintiff, to recover expenses incurred and disbursements made by plaintiff in the defense, appeal and settlement of a lawsuit arising out of an accident occurring at the crossing of said tracks and right of way over 106th Street, in Chicago.

The case at bar was tried before the court sitting without a jury. A finding and a judgment were entered for defendant from which judgment this appeal has been taken.

The lawsuit was brought by Miriam Uzdzinski, in an Illinois state court, against plaintiff herein. On September 25, 1950, she was a passenger on a motorcycle proceeding easterly on 106th street and was accidentally injured by coming into contact with a crossing gate which was being lowered.

At all times relevant herein there was in force and effect said agreement between the parties to this case (originally executed by their predecessors) which included the following:

"3. In addition to the rental as above provided, each of the companies agrees to pay its proportion of the cost of operation and maintenance of said demised railroad and appurtenances; taxes and assessments on the demised property to be regarded as part of the expenses of operation and maintenance. The rental and expenses so to be paid by all parties using the demised railroad and appurtenances shall be paid by each party in the proportion that the car mileage of each party using the demised property bears to the car mileage of all parties using the demised property (it being understood that each engine shall count as two cars), and payment of said rental and expenses shall be made monthly upon draft of proper accounting officer, on or before the twenty-fifth day of each month succeeding the month for which bills for the proper proportion of said rental and of said expenses shall be presented.[1]

\*   \*   \*   \*   \*   \*   \*

[1]. It is admitted that during the month of September 1950 the cost of operation and maintenance of said railroad and appurtenances was prorated 58.03% to defendant and 41.97% to plaintiff under and by virtue of the provisions of the above-quoted paragraph 3, and the proration formula contained therein.

"6. The trains of the various parties making use of the demised railroad and appurtenances shall be operated under the rules and regulations of * * * [plaintiff]." [2]

In the following excerpts from paragraph 8 of said agreement, the word "plaintiff" is substituted for each reference to party of the first part, and the word "defendant" is substituted for each reference to parties of the second and third parts, who are defendant's predecessors.

The first sentence of paragraph 8 reads:

" * * * defendant * * * assume[s] all risk of loss, damage, or expense that may be inflicted upon * * * [it] * * * or in respect to * * * [its] * * * employes, passengers, or the property of other parties under * * * [its] * * * control, arising from any act or omission on the part of any officer, agent, or employe of * * * plaintiff * * * or the employes of * * * defendant * * * while on the track system, a right of joint use of which is hereby demised, and shall and will during the continuance of this agreement, save and keep the * * * plaintiff * * * harmless from any and all claims, demands, loss, or damage on account thereof."

The second sentence of paragraph 8 reads:

" * * * defendant * * * hereby * * * assume[s] all risk and all liability for injury or damage to persons, * * * caused by * * * [its] trains, cars, or locomotives, by reason of or growing out of * * * the failure to erect * * * gates, * * * at * * * street crossings in compliance with law, * * * or the erection or construction of * * * gates, * * * which do not fully conform to law, and * * * defendant shall and will * * * save and keep * * * plaintiff harmless from any and all claims, demands, loss or damage on account thereof: * * *."

The third sentence of pargraph 8 reads:

" * * * defendant * * * agrees that in case any action * * * shall be commenced by any party * * * against the plaintiff growing out of any such damage or injury as aforesaid, said * * * plaintiff may give written notice of the same to said * * * defendant and thereafter said * * * defendant shall attend to the defence of the same, and save and hold harmless said * * * plaintiff from all expenses, counsel fees, costs, liabilities, disbursements, recoveries, judgments and executions in any manner growing out of, pertaining to or connected therewith."

The complete text of paragraph 8 appears in a footnote.[3]

---

2. Plaintiff's rules and regulations in effect on September 25, 1950, provided:

"1103a–B1. Trains or engines must stop before passing over the following public highway crossings at grade, during the hours there is no crossing watchman on duty and, unless otherwise provided, a member of the crew must protect the crossing in advance of each movement over the crossing:"

"30. The engine bell must be rung when an engine is about to move, when running through tunnels, while approaching and passing public crossings at grade and when passing a train standing on an adjacent track."

3. "8. The parties of the second and third parts, each respectively, assume all risk of loss, damage, or expense that may be inflicted upon them or either of them or in respect to their employes, passengers, or the property of other parties under their control, arising from any act or omission on the part of any officer, agent, or employe of the first party or the employes of the second or third parties while on the track system, a right of joint use of which is hereby demised, and shall and will during the continuance of this agreement, save and keep the first party harmless from any and all claims, demands, loss, or damage on account thereof. And the parties of the second and

In her suit against the present plaintiff, Mrs. Uzdzinski charged, *inter alia*, that she had been injured by reason of the alleged negligent failure of plaintiff herein properly to construct, maintain and operate the gates at the 106th street crossing.[4]

It is our opinion that the first sentence of paragraph 8 has no application to this case. It is limited to loss, damage or expense inflicted upon *defendant* or in respect to its employees, passengers, or the property of other parties under its control.

■ As to the second sentence of paragraph 8, we find no ambiguity in its language. We do consider controlling the language thereof which imposes on defendant risk and liability for injury or damage to persons and property *caused by its trains, cars, or locomotives*. On this subject our views coincide with those of the district court expressed in the following paragraphs of its opinion, which we adopt:[5]

"Examined in the light of the fair and reasonable meaning of the writing considered as a whole, the sentence does not make the defendant a general liability insurer for the plaintiff with respect to all injury or damage which may occur from whatever source. Its import is more narrow and more precise. The clause constitutes rather a declara-

third parts, each respectively, hereby further assume all risk and all liability for injury or damage to persons, or to their own property, or to property of third parties caused by their trains, cars, or locomotives, by reason of or growing out of all defects in the right of way, roadbed, track or tracks, bridges, or culverts, or insufficiency of the fences, or a lack of fences along the right of way of the railway and tracks covered by this indenture, or the failure to erect or build signboards or gates, or cattle guards, or other protections at highway or street crossings in compliance with law, or the failure to erect interlocking systems or other safety appliances at railway crossings, connections, or intersections, or the erection or construction of fences, signboards, gates, cattle guards, interlocking systems or other safety appliances or protection which do not fully conform to law, and they and each of them shall and will during the continuance of this agreement save and keep the party of the first part harmless from any and all claims, demands, loss or damages on account thereof; but if the party of the first part shall fail to repair defects in the tracks or bridges within a reasonable time after notice in writing so to do, specifying such defects, or shall fail to build or erect such fences, sign-boards, gates and cattle guards, interlocking systems or other safety appliances as may be required by law, or to repair the same if needing repairs, within a reasonable time after notice in writing so to do, specifying the places where such fences, signboards, gates, cattle guards interlocking systems or other safety appliances should be erected or repairs thereon are needed, or the changes necessary to make the same conform to the requirements of law, the parties of the second and third parts may repair such defects in the track or bridges, and erect such fences, signboards, gates, cattle guards, interlocking systems or other safety appliances or repair the same, or change the same so as to conform to law, at the cost and expense of the first party, subject to the provisions herein contained as to the division of the cost and expense of maintenance, renewals, and repairs.

"And the parties of the second and third parts, each respectively, hereby further covenant and agree that in case any action or actions, suit or suits, shall be commenced by any party or parties against the first party growing out of any such damage or injury as aforesaid, said first party may give written notice of the same to said second and third parties, and thereafter said second and third parties shall attend to the defense of the same, and save and hold harmless said first party from all expenses, counsel fees, costs, liabilities, disbursements, recoveries, judgments and executions in any manner growing out of, pertaining to or connected therewith."

4. Plaintiff takes the position that, regardless of what set of facts forms the basis for the liability imposed on plaintiff in the Uzdzinski case, such facts and circumstances are covered by one or more of the provisions of the joint facility agreement and that plaintiff is entitled to recover from defendant all or part of the damages and expenses proven at the trial of this case.

5. 159 F.Supp. 19, 23.

tion that in obtaining the right to use this right of way, the defendant must take it as he finds it, and that a loss caused by the defendant's train cannot be cast upon the plaintiff because of any defect or shortcoming in the leased premises.

"Still the defendant's duty to indemnify arises only when the injury has been 'caused' by its trains. To meet this requirement, plaintiff relies upon the stipulation of the parties that one of the crew members on the defendant's train would, if called, testify that the engine bell was not rung and the whistle not sounded as the train approached the crossing. It is claimed that these omissions 'caused' the injury to Mrs. Uzdzinski, since an audible warning of the approaching train would have given warning, too, that the gates would be lowered. It was also stipulated, however, that another member of the crew of defendant's train would testify, if called as a witness, that the warning bell on the watchman's gate house, specifically designed to warn travelers that the gates will be lowered, was rung. Neither witness appeared before the court, and the court has no basis for determining credibility. Taking the stipulated testimony of both crewmen to be true, it does not appear by a preponderance of the evidence that the breach of any supposed duty of the defendant's train crew to give warning that the gates would be closed caused the injuries for which Mrs. Uzdzinski recovered. A direct, audible warning of the closing gates had been given by the plaintiff's employee responsible for doing so. Whether an added warning of a visible approaching train, giving inferential warning of lowering gates, would have served any useful purpose lies in the realm of conjecture.

"Upon these findings, the factual situation on the question of cause discloses that the defendant's train was related to the injury only by reason of the fact that the presence of the train was the occasion for the plaintiff's watchman to lower the gates. The direct physical cause of the injury was the claimant's violent contact with the crossing gate. The proximate cause of the injury was the plaintiff's negligence, whether in providing crossing protection equipment not in compliance with law, in allowing the gate to fall into disrepair, or in its employee's lowering the gate without warning. In any event, the injury was not 'caused by [the defendant's] train' in the usual and reasonable meaning of those terms. The train was nearly stationary at a distance of 150 feet from the place of the injury. No part of the train, locomotive, or cars ever came into contact with the crossing gates, the motorcycle, the driver, or Mrs. Uzdzinski. No negligent act of the defendant's train crew contributed to the injury. In these circumstances, it does not appear that the train 'caused' the injury, within the meaning of that term intended by the parties in the light of the circumstances surrounding their agreement. In ordinary usage, a cause is distinguished from a condition or occasion. 'The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act.' Merlo v. Public Service Co., 1942, 381 Ill. 300, at pages 316–317, 45 N.E. 2d 665, at page 675. See Storen v. City of Chicago, 1940, 373 Ill. 530, 533, 27 N.E.2d 53, 55.

"No public policy forbids the plaintiff from shifting the risk of loss from its own negligence or that of its employees onto the defendant by mutual assent. United States Steel Corp. v. Emerson-Comstock Co., D.C.N.D.Ill.1956, 141 F.Supp. 143. But it will not lightly be assumed that the defendant took upon itself the burden of answering for the negligence of the plaintiff and

its employees over whom the defendant had no control, in occurrences not involving the defendant's trains. A contract will not be construed to indemnify a party against his own misconduct without a clear warrant in the language employed. Chicago & N. W. Ry. Co. v. Chicago Packaged Fuel Co., 7 Cir., 1952, 195 F.2d 467, 472. * * *"

We hold that the injury to Mrs. Uzdzinski was not caused by defendant's train, cars or locomotive, within the meaning of the second sentence of paragraph 8.

■ We must also consider plaintiff's alternative claim based on paragraph 3 of the agreement, 261 F.2d 940. It asserts that, even if it should be held not entitled to 100% indemnity under paragraph 8 of the agreement, there can be no question as to its clear right to recover proportionate indemnity under the provisions of paragraph 3 thereof and the interpretation placed thereon by the parties themselves. Plaintiff argues that the expense of personal injury claims is a cost of operating a railroad system and that, therefore, defendant should contribute to it 58.03% of the total expended on the Uzdzinski claim.

We approve of and adopt the following paragraphs from the district court's opinion:[6]

"Under this agreement the cost to be apportioned is not the cost of operation of the railroad system; it is rather the 'cost of operation and maintenance of said demised railroad and appurtenances.' The cost of operating trains and moving rolling stock over the section of track is not to be divided. The specific enumeration of taxes and assessments on the demised property would have been superfluous had the parties intended a general sharing of *all* costs of the railroad system. In practice, under this clause, the par-

ties have apportioned the expenses of the upkeep of the tracks, roadbed, and incidental equipment, the wages paid to employees (including the watchman for the crossing gate involved) operating this incidental equipment, and incidental expenditures for electricity, coal, oil, street lighting, and the like. In one instance, the defendant paid some $600 as its portion of a settlement with the widow of one of plaintiff's employees who had been serving as a crossing watchman on the jointly used track and who had been killed in the course of employment by the train of a third railroad. It is not clear, however, whether the defendant's payment was intended as a concession of liability or simply as the compromise of a disputed claim. Even if the payment should be regarded as an unqualified concession, the defendant's consent to share the compensation paid to employees injured while operating the facilities of the system, whose wages are divided as a matter of course under the contract, does not constitute a binding interpretation between the parties that the contract contemplates the sharing of awards made for personal injuries of outsiders.

"If this paragraph of the agreement were construed to require the proportionate sharing of the costs of personal injury claims, the detailed provisions for indemnity against the plaintiff's liability would have been unnecessary. If the joint facility agreement is viewed as a whole, and if each of its provisions is given effect according to its reasonable intendment, the expense of the Uzdzinski claim is not a 'cost of operation and maintenance' of the leased property."

For these reasons, the judgment of the district court is affirmed.

Affirmed.

6. 159 F.Supp. 19, 26.