Filed 4/1/21

# CERTIFIED FOR PARTIAL PUBLICATION*

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| TSASU LLC,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>U.S. BANK TRUST, N.A., as Trustee, etc.,<br><br>     Defendant and Respondent. | B298589<br><br>(Los Angeles County<br>Super. Ct. No. BC686325) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

Garrett & Tully, Ryan C. Squire, Motunrayo D. Akinmurele and Linda R. Echegaray for Plaintiff and Appellant.

Perkins Coie, David T. Biderman and Ofunne N. Edoziem for Defendant and Respondent.

\* \* \* \* \* \*

---

\*     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

Under California's Quiet Title Act (Code Civ. Proc., § 760.010 et seq.)[1] (the Act), a third party who "act[s] in reliance on" a quiet title judgment retains its property rights—even if that quiet title judgment is subsequently invalidated as void—as long as the third party qualifies as a "purchaser or encumbrancer for value . . . without knowledge of any defects or irregularities in [the earlier quiet title] judgment or the proceedings." (§ 764.060.) For these purposes, does "knowledge" mean only *actual* knowledge or, instead, both *actual and constructive* knowledge? We hold that it is the latter, such that the Act insulates a third party from the effect of a subsequent invalidation of an earlier quiet title judgment only if the third party has no actual or constructive knowledge of any defects or irregularities in that judgment. Because the recorded chain of title in this case revealed that the earlier quiet title judgment had been prosecuted and obtained against a party that no longer held interest in a deed of trust and because the third party whose lien priority rested on that judgment actually knew of facts warranting further inquiry into the validity of the judgment, that third party had constructive knowledge of a defect or irregularity in the judgment. As a result, the trial court properly granted summary judgment against the third party in its current quiet title lawsuit to assert lien priority.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

This action deals with a parcel of property located at 9800 South 5th Avenue in Inglewood, California (the property).

---

1 All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

## A. *CIT Group Deed of Trust*
### 1. *Creation*

In February 2007, Cassandra Celestine (Celestine) borrowed $448,000 from CIT Group/Consumer Financing (CIT Group); CIT Group secured its loan with a deed of trust in the property that was recorded on February 28, 2007 (CIT Deed of Trust).

Celestine paid the first three monthly payments on the loan, and then stopped making payments.

### 2. *Subsequent assignments*

In early September 2012, CIT Group assigned the CIT Deed of Trust to U.S. Bank, N.A. as trustee on behalf of SASCO Mortgage Loan Trust 2007-RNP1 (SASCO).[2]  The assignment was recorded on September 26, 2012.

In early June 2014, SASCO assigned the CIT Deed of Trust to DLJ Mortgage Capital, Inc. (DLJ Mortgage).  The assignment was recorded on June 13, 2014.

### 3. *Initiation of foreclosure proceedings*

On July 3, 2014, which was less than a month after the assignment to DLJ Mortgage, DLJ Mortgage recorded—and mailed to Celestine—a notice of default setting forth the outstanding balance Celestine owed *to DLJ Mortgage* and giving her 90 days to pay.

### 4. *Celestine's quiet title action to set aside and expunge the CIT Deed of Trust*

Before the 90-day deadline expired, Celestine on September 11, 2014, filed a lawsuit (the Celestine Action).  Proceeding as a

---

[2]     Prior to this assignment, a false grant deed was recorded that purported to convey the CIT Deed of Trust back to Celestine. Celestine later agreed to set aside the false grant deed.

self-represented litigant, Celestine alleged 12 claims, including a claim under the Act to invalidate the CIT Deed of Trust. She filed a notice of lis pendens regarding her lawsuit on September 23, 2014.

Although SASCO and DLJ Mortgage had recorded their assignment of the CIT Deed of Trust and although Celestine had exchanged letters with the loan servicers reaffirming that SASCO and then DLJ Mortgage had acquired the CIT Deed of Trust from CIT Group, Celestine did not name SASCO or DLJ Mortgage as defendants. Instead, she named only (1) CIT Group, and (2) "All Persons Known & Unknown Claiming Any Legal Or Equitable Right, Title, Estate, Lien, or Interest In The Property Described In The Complaint Adverse To Plaintiff Title Or Any Cloud On Plaintiff Title Thereto." What is more, Celestine did not properly serve CIT Group with the complaint.

As a result, no one with an interest in the property was ever served with Celestine's complaint and, consequently, no one ever appeared.

On October 29, 2014, Celestine obtained a default.

On May 28, 2015, the trial court entered a default judgment quieting title to the property against CIT Group and permanently enjoining CIT Group and its "successors in interest" from "[a]sserting . . . any interest or ownership" in the property, including through the CIT Deed of Trust (2015 Quiet Title Judgment). The 2015 Quiet Title Judgment was recorded on July 22, 2016.

On August 4, 2016, the trial court issued an order expunging the CIT Deed of Trust and declaring it to be "Reversed, Cancelled, Set Aside and made Null and Void, Ab

4

Initio, for all purposes" (2016 Expungement Order). The 2016 Expungement order was recorded on August 10, 2016.

5. *Transfer of loan and assignment of CIT Deed of Trust to U.S. Bank*

On April 14, 2016, DLJ Mortgage had transferred the loan underlying the CIT Deed of Trust to U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust (U.S. Bank).

On August 3, 2016, DLJ Mortgage assigned the CIT Deed of Trust to U.S. Bank. The assignment was recorded on August 11, 2016.

6. *Proceedings to set aside and expunge the 2015 Quiet Title Judgment*

On December 20, 2016, Caliber Home Loans, Inc. (Caliber) specially appeared in the Celestine Action and filed a motion to set aside the default and the 2015 Quiet Title Judgment against CIT Group on the ground that CIT Group had never received notice of the lawsuit. Caliber is the successor in interest to CIT Group.

On May 8, 2017, the trial court granted Caliber's motion and set aside the 2015 Quiet Title Judgment, and on July 10, 2017, Caliber recorded the order setting aside the judgment.

On July 24, 2017, the trial court granted Caliber's further motion to expunge the 2015 Quiet Title Judgment and the 2016 Expungement Order from the record of title.

7. *Dismissal of Celestine Action*

On August 17, 2017, the trial court dismissed the Celestine Action for lack of prosecution.

**B. *Tsasu Deed of Trust***

On September 2, 2016, Celestine borrowed $285,000 from Tsasu, LLC (Tsasu); Tsasu secured its loan with a deed of trust

5

against the property that was recorded on September 15, 2016 (Tsasu Deed of Trust).

At the time the Tsasu Deed of Trust was recorded, the recorded documents in the record of title for the property included (1) the 2015 Quiet Title Judgment *against CIT Group* that invalidated the CIT Deed of Trust, and (2) the 2012 and 2014 assignments of the CIT Deed of Trust reflecting that the CIT Group had not owned the CIT Deed of Trust since 2012. In deciding whether to loan Celestine money, Tsasu's CEO relied upon a preliminary report prepared by a title insurance company, and that report was based upon "the results of the title search" obtained by that company. The title search results accurately reflected the above described recorded documents—namely, a "Judgment, Quiet Title" on July 10, 2015 against "The CIT Group" as well as two "Deed of Trust/Assignment[s]" (one to SASCO in 2012, and another to DLJ Mortgage in 2014).

Celestine also stopped making payments to Tsasu.

## II. Procedural Background

In December 2017, Tsasu sued U.S. Bank.[3] In the operative first amended complaint, Tsasu alleges two claims for declaratory relief and one for quiet title. Through these claims, Tsasu seeks (1) a quiet title and declaratory judgment that the Tsasu Deed of Trust has priority over the CIT Deed of Trust because the orders setting aside and expunging the 2015 Quiet

---

[3]     Tsasu also named Quality Loan Service Corporation (Quality), which was the foreclosure trustee at the time Celestine had filed the Celestine Action. However, Quality filed a declaration of nonmonetary status, agreeing to be bound by any judgment for nonmonetary relief. Quality is accordingly no longer an active party in this case.

6

Title Judgment are ineffective *as to Tsasu* and (2) a declaratory judgment that (a) Tsasu was denied due process because it was not given timely notice of, or asked to join in, the proceedings to set aside and expunge the 2015 Quiet Title Judgment, (b) enforcing the orders setting aside and expunging the 2015 Quiet Title Judgment against Tsasu would run afoul of the "equitable doctrine of unclean hands" and the maxim in Civil Code section 3543 (because Tsasu was less negligent than U.S. Bank).

The parties filed cross-motions for summary judgment or, in the alternative, summary adjudication.[4]

Following a hearing in late February 2019, the trial court in April 2019 issued a 16-page order granting summary judgment for U.S. Bank, declaring U.S. Bank's motion for summary adjudication to be moot, and denying Tsasu's cross-motion.

Tsasu filed a motion for a new trial after the trial court entered its judgment of dismissal. The trial court denied the motion on June 17, 2019.

Tsasu filed this timely appeal.

## DISCUSSION

Tsasu argues that the trial court erred in granting summary judgment for U.S. Bank, and goes on to request the logically inconsistent remedies of a remand for trial of disputed factual issues and the entry of summary judgment in its favor. Tsasu also challenges the trial court's denial of its new trial motion, but did not raise this challenge in its opening brief on

---

[4]    To preserve its jurisdiction to resolve the lawsuit, the trial court granted a preliminary injunction prohibiting U.S. Bank from foreclosing on the CIT Deed of Trust pending suit. The injunction was dissolved once the trial court entered judgment for U.S. Bank, and the property was subsequently sold.

7

appeal and devoted only one paragraph to it in its reply brief; Tsasu's decision not to present reasoned argument in support of its challenge to the new trial motion in its opening or reply briefs on appeal constitutes a waiver of that challenge. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [arguments not supported by "reasoned argument"; waived]; *Raceway Ford Cases* (2016) 2 Cal.5th 161, 178 [arguments raised for first time in reply brief; waived].) We will consequently limit our review to the trial court's summary judgment ruling.

Summary judgment is appropriate, and the moving party (here, the defendant) is entitled to judgment as a matter of law, where (1) the defendant carries its initial burden of showing the nonexistence of one or more elements of the plaintiff's claim(s), and (2) the plaintiff thereafter fails to show the "existence of a triable issue of material fact" as to those elements. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853; § 437c, subds. (a)(1), (c), (*o*)(1), (p).) We independently review a trial court's grant of summary judgment, while "liberally construing the evidence supporting" the nonmoving party and "resolving any doubts" against summary judgment. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500.) Our review focuses on the propriety of the trial court's ruling, not its rationale. (*Coral Construction, Inc. v. City & County of San Francisco* (2010) 50 Cal.4th 315, 336.)

Whether Tsasu is entitled to the quiet title and declaratory judgments it seeks in its operative complaint turns entirely on what effect, if any, the trial court's orders setting aside and expunging the 2015 Quiet Title Judgment have on Tsasu's Deed of Trust, which was recorded *after* the 2015 Quiet Title Judgment was recorded but *before* it was set aside as void. As a general

rule, whichever deed of trust is recorded first in time is entitled to priority (Civ. Code, § 1214; see *Thaler v. Household Finance Corp.* (2000) 80 Cal.App.4th 1093, 1099 ["California follows the 'first in time, first in right' system of lien priorities"]), and it is undisputed that the 2007 CIT Deed of Trust was recorded before the 2016 Tsasu Deed of Trust.  Thus, the viability of Tsasu's claims seeking to establish that the later-in-time Tsasu Deed of Trust has priority turns on whether the general rule that would confer priority upon the CIT Deed of Trust is superseded by (1) the Act, or (2) further considerations such as (a) Tsasu's lack of notice and involvement in the proceedings to set aside and expunge the 2015 Quiet Title Judgment, or (b) Caliber's failure to move to set aside the 2015 Quiet Title Judgment before Tsasu purportedly relied upon it in believing its lien would be in first position.  Because these arguments turn on the meaning of the Act and the application of the law to undisputed facts, our review is de novo.  (*Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183 (*Union of Medical Marijuana*) ["Statutory interpretation is 'an issue of law, which we review de novo.' [Citation.]"]; *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 [where the "issue involves the application of law to undisputed facts, we review the matter de novo"].)

## I.     The Quiet Title Act

Enacted in 1980, the Act creates a special procedural mechanism for seeking and obtaining in rem judgments resolving adverse claims to property that would be binding even to nonparties and hence be "good against all the world."  (*Nickell v. Matlock* (2012) 206 Cal.App.4th 934, 944 (*Nickell*); *Deutsche Bank National Trust Co. v. McGurk* (2012) 206 Cal.App.4th 201,

9

215 (*McGurk*); *Harbour Vista, LLC v. HSBC Mortgage Services, Inc.* (2011) 201 Cal.App.4th 1496, 1505-1506 (*Harbour Vista*); see generally 760.010 et seq., Stats. 1980, ch. 44, § 15.)

The requirements for obtaining a quiet title judgment under the Act are more stringent than the requirements for obtaining judgments resolving adverse claims to property under other causes of action.  (Cf. *Deutsche Bank National Trust Co. v. Pyle* (2017) 13 Cal.App.5th 513, 523-524 (*Pyle*) [claims for cancellation of instruments subject to different rules than those under the Act]; *Reiner v. Danial* (1989) 211 Cal.App.3d 682, 689 [claims to "remove a cloud on title" subject to different rules than those under the Act].)  To obtain such a quiet title judgment under the Act, a plaintiff must (1) file a verified complaint that specifically names "as defendants . . . [all] persons having adverse claims" "to plaintiff's title" and must include those "known to the plaintiff or reasonably apparent from an inspection of the property" itself (§§ 761.020, 762.060, subd. (b); see *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 173 ["[a] quiet title judgment cannot be entered in the absence of all parties with an interest in the property at issue"]); (2) file a notice of lis pendens regarding the quiet title action (§ 761.010, subd. (b)); and (3) establish its entitlement to a quiet title judgment with "evidence of plaintiff's title" rather than "by default" (§ 764.010; *Pyle*, at p. 524; *Nickell*, *supra*, 206 Cal.App.4th at pp. 941-942), although the courts are divided as to whether this requires an evidentiary hearing at which a defaulted defendant is entitled to participate (*Harbour Vista*, *supra*, 201 Cal.App.4th at pp. 1503-1507) or merely an evidentiary hearing (*Yeung v. Soos* (2004) 119 Cal.App.4th 576, 581).

10

If the plaintiff in the quiet title action satisfies the Act's more stringent requirements, the resulting quiet title judgment is more resilient to subsequent challenges to the interest litigated in that action.  However, the extent of this resilience varies.  As to a person who had a "claim to the property" at the point in time at which quiet title was determined and who was "a part[y] to the [quiet title] action," a quiet title judgment under the Act is "binding and conclusive."  (§ 764.030, subd. (a); see also § 761.020, subd. (d) [quiet title action must articulate "[t]he date as of which the determination [of title] is sought"].)  As to a person who had a "claim to the property" at the point in time at which quiet title was determined and who was *not* a "part[y] to the action," a quiet title judgment under the Act is "binding and conclusive" unless, "at the time the lis pendens was filed or, if none was filed, at the time the [quiet title] judgment was recorded," (1) the nonparty's claim was "of record" (§§ 764.030, subd. (b), 764.045, subd. (a)), or (2) the nonparty's claim "was actually known to the plaintiff or would have been reasonably apparent from an inspection of the property" (§ 764.045, subd. (b)).  And as to a person who "reli[ed] on the [quiet title] judgment" when subsequently acquiring a claim to the property, a quiet title judgment under the Act remains valid pursuant to section 764.060—even if that judgment is later invalidated through "direct[] or collateral[] attack[]"—as long as that person was a "purchaser or encumbrancer for value . . . without knowledge of any defects or irregularities in the [quiet title] judgment or the proceedings."  (§ 764.060.)  The Act's treatment of persons falling into the last category marks a departure from prior law, which held that a court order invalidating an earlier judgment resolving a claim to property also invalidated all

11

subsequent property claims made in reliance on that judgment unless (1) the judgment was "valid on [its] face" (that is, the defect with the judgment could not be determined "'only by a consideration of the matters constituting part of the judgment roll'") (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327-1328 (*OC Interior*); *Johnson v. Hayes Cal Builders, Inc.* (1963) 60 Cal.2d 572, 576), and (2) the person relying on the judgment was a "bona fide purchaser" (*OC Interior*, at pp. 1328-1329; *Garrison v. Blanchard* (1932) 127 Cal.App. 616, 621-623 (*Garrison*)).

Because Tsasu acquired its claim to the property during the interregnum period between the recording of the 2015 Quiet Title Judgment under the Act and the set aside and expungement of that judgment in 2017, the priority position of the Tsasu Deed of Trust under the Act turns on whether Tsasu falls within the ambit of section 764.060.

### A. *Interpreting section 764.060*

As noted above, section 764.060 insulates the lien priority of a person who has "act[ed] in reliance" on a quiet title "judgment" from the effects of a subsequent invalidation of that judgment if that person was a "purchaser or encumbrancer for value of the property . . . *without knowledge of any defects or irregularities in the* [*quiet title*] *judgment or the* [*quiet title*] *proceedings*." (§ 764.060, italics added.)[5]

---

[5] In full, the statute provides: "The relief granted in an action or proceeding directly or collaterally attacking the judgment in the action, whether based on lack of actual notice to a party or otherwise, shall not impair the rights of a purchaser or encumbrancer for value of the property acting in reliance on the judgment without knowledge of any defects or irregularities in the judgment or the proceedings." (§ 764.060.)

12

Section 764.060 does not define what it means by "knowledge of any defects or irregularities."  Tsasu urges that knowledge means *actual knowledge*, that the undisputed facts show that it did not have *actual knowledge* of any "defects or irregularities" in the 2015 Quiet Title Judgment, and that Tsasu is accordingly entitled to summary judgment because it falls within section 764.060's protection.  U.S. Bank urges that knowledge means *actual or constructive knowledge*, that the undisputed facts show that Tsasu had constructive knowledge that the 2015 Quiet Title Judgment was defective because it constructively knew that Celestine had not named the proper defendant as required by the Act, and that U.S. Bank is accordingly entitled to summary judgment because Tsasu falls outside of section 764.060's protection.

We are consequently confronted with the question:  Does section 764.060's requirement of no "knowledge" mean no actual knowledge or, instead, no actual and no constructive knowledge?  We conclude that section 764.060 requires the absence of both actual and constructive knowledge, and do so for three reasons.

First, defining "knowledge" in section 764.060 to encompass both actual and constructive knowledge is the result dictated by the statute's plain language.  (*People v. Maultsby* (2012) 53 Cal.4th 296, 299 ["The statute's plain language controls unless its words are ambiguous"].)  Section 764.060 uses the term "knowledge," and "knowledge" encompasses both actual knowledge *and* constructive knowledge.  (*Ham v. Grapeland Irrigation Dist.* (1916) 172 Cal. 611, 617 (*Ham*); *Scheas v. Robertson* (1951) 38 Cal.2d 119, 130 (*Scheas*).)

Second, defining "knowledge" in section 764.060 to encompass both actual and constructive knowledge is the result

13

dictated by the statute's incorporation of the common law concept of a bona fide purchaser. When a statute borrows concepts or language from the common law, we presume the statute also borrows the common law associated with that concept or language. (*Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, 1110-1111; *Baker v. Baker* (1859) 13 Cal. 87, 95-96; *Lewis v. Superior Court* (1990) 217 Cal.App.3d 379, 387.) Here, section 764.060 expressly incorporates the common law concept of a bona fide purchaser: The statute applies to a "purchaser or encumbrancer for value . . . without knowledge of any defects or irregularities," which is indistinguishable from the common law concept of a "bona fide purchaser" who "purchase[s] the property in good faith for value" and has "no knowledge or notice of the asserted rights of another." (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251 (*Melendrez*); *Pyle, supra*, 13 Cal.App.5th at p. 521.) To qualify as a bona fide purchaser at common law, a person must lack *both* actual and constructive knowledge of competing rights; in other words, the term "knowledge" at common law refers to both actual and constructive knowledge. (*Pyle*, at p. 521; *612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270, 1278 (*612 South LLC*); *OC Interior, supra*, 7 Cal.App.5th at p. 1331; *Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 107 (*Vasquez*).) That same definition presumptively applies here, in the absence of a contrary intent.

For the first time on appeal, plaintiff asks us to infer a contrary intent from the fact that our Legislature used the phrase "bona fide purchaser or encumbrancer" in section 764.045 but not in section 764.060 and from the maxim that the "different language in two statutes enacted at the same time" suggests a

14

"different" meaning.  (E.g., *Ferra v. Loews Hollywood Hotel, LLC* (2019) 40 Cal.App.5th 1239, 1247, review granted Jan. 22, 2020, S259172.)  To be sure, section 764.045, subdivision (b), provides that "the rights" of a subsequent "bona fide purchaser or encumbrancer" are not to be "impair[ed]" simply because the plaintiff "actually kn[ew]" of a competing claim for the property "at the time the [quiet title] judgment was entered."  (§ 764.045, subd. (b).)  But the effect of this language is to clarify that the rights of a subsequent purchaser of the property are governed, not by section 764.045, but rather by the only other section in the Act addressing the rights of such subsequent purchasers— namely, section 764.060.  Thus, section 764.045's use of the phrase "bona fide purchaser or encumbrancer" is necessarily a shorthand for the more detailed definition set forth in section 764.060, not a subtle means of telegraphing that the language in section 764.060 means something different.  Thus, our Legislature's use of that phrase *reinforces* rather than *undermines* the link between the common law definition of bona fide purchaser and section 764.060.

Third, defining "knowledge" in section 764.060 to encompass both actual and constructive knowledge is the result dictated by public policy.  (*Union of Medical Marijuana, supra*, 7 Cal.5th at p. 1184 [courts may look to "public policy" when construing statutes].)  "Actual" knowledge exists when a person is subjectively aware of a fact.  (E.g., *In re A.L.* (2019) 38 Cal.App.5th 15, 21.)  "Constructive" knowledge exists when a person is deemed in the eyes of the law to be aware of a fact, either because (1) the person has "'knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact . . . [Citations]'" (*Melendrez, supra*, 127 Cal.App.4th at p. 1252,

15

quoting *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1443), or (2) the fact is contained in a document that has been "'recorded as prescribed by law'" (*First Bank v. East West Bank* (2011) 199 Cal.App.4th 1309, 1314 (*First Bank*); *In re Marriage of Cloney* (2001) 91 Cal.App.4th 429, 436-437; Civ. Code, § 1213 [providing that a recorded document "is constructive notice of the contents thereof"]).

If, as Tsasu suggests, only a person's *actual* knowledge of a defect or irregularity in an earlier quiet title judgment can render section 764.060 inapplicable, then a person would still be entitled to maintain a property claim based upon a later-invalidated quiet title judgment even if defects or irregularities in that judgment had appeared in the record of title for that property and even if the person had been subjectively aware of facts that, upon further inquiry, would have revealed those defects or irregularities. This interpretation of section 764.060 creates wholly perverse incentives because it discourages prospective buyers from checking the record of title or from heeding "warning signs" necessitating further inquiry—lest they acquire actual knowledge of a defect or irregularity with a quiet title judgment that would strip them of section 764.060's protection. Such incentives are inimical to the entire system of real property law in California, which places upon real estate buyers a duty to inquire into the validity of their prospective ownership claim (*Bishop Creek Lodge v. Scira* (1996) 46 Cal.App.4th 1721, 1735), and to heed—not ignore—any "'reasonable warning signs'" (*612 South LLC, supra,* 184 Cal.App.4th at pp. 1278-1279; *Triple A Management Co. v. Frisone* (1999) 69 Cal.App.4th 520, 531 (*Triple A Management*)). (Accord, *Gerhard v. Stephens* (1968) 68 Cal.2d 864, 908 [rejecting interpretation that would "permit a plaintiff to willfully or

16

negligently close his eyes to the means of knowledge and thus secure a decree" regarding ownership of real property]; *Melendrez, supra*, 127 Cal.App.4th at p. 1252 ["'[t]he recording laws were not enacted to protect those whose ignorance of the title is deliberate and intentional . . .'"].)  Because the purpose of section 764.060 is "to enhance the marketability of property as to which a quiet title decree has been rendered" (*Pyle, supra*, 13 Cal.App.5th at p. 525 [citing Law Revision Commission comment]), not to encourage recklessness or willful ignorance, we decline to adopt Tsasu's proffered interpretation of section 764.060.

Tsasu offers four further arguments in support of its position that the only type of disqualifying "knowledge" in section 764.060 is actual knowledge.

First, Tsasu points to the habit of many courts in referring to constructive knowledge as "constructive notice."  (E.g., *Vasquez, supra*, 52 Cal.App.5th at p. 108.)  From this, Tsasu extrapolates that "notice" is always "constructive" and that "knowledge" is always "actual."  Tsasu is wrong.  Both notice and knowledge can come in two flavors—actual and constructive. (Civ. Code, § 18 ["notice" may be "actual" or "constructive"]; *Marina Pacifica Homeowners Assn. v. Southern California Financial Corp.* (2014) 232 Cal.App.4th 494, 511 [so holding]; *Ham, supra*, 172 Cal. at p. 617 [referring to "actual knowledge"]; *Scheas, supra*, 38 Cal.2d at p. 130 [same].)  More to the point, the terms "notice" and "knowledge" have been used interchangeably—and have been used to refer to both actual and constructive notice and knowledge—in cases applying the bona fide purchaser doctrine.  (E.g., *612 South LLC, supra*, 184 Cal.App.4th at p. 1278; *Garrison, supra*, 127 Cal. App. at p. 622.)

17

Second, Tsasu cites a number of cases indicating that the term "knowledge" is sometimes used to refer solely to *actual* knowledge. These cases are unhelpful, however, because they arise in different contexts and do not involve bona fide purchasers or encumbrancers of real property. (*Merrill v. Pacific Transfer Co.* (1901) 131 Cal. 582, 587, 589 [interpreting a statute enforcing liability limits of common carriers through contracts signed with "knowledge of [their] terms"]; *Nautilus, Inc. v. Yang* (2017) 11 Cal.App.5th 33, 37, 46 [construing contours of "good faith defense" to the tort of fraudulent conveyance]; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 355 [deciding whether statute of limitations begins to tick once a person has "actual or inquiry notice" of an incorrect payment], italics omitted; *Eisenbaum v. Western Energy Resources, Inc.* (1990) 218 Cal.App.3d 314, 325 [same, as to claim for breach of fiduciary duty].)

Third, Tsasu argues that other provisions of the Act use the word "notice" or "variants of 'know,'" such that the Act's use of the word "knowledge" in section 764.060 is limited to actual knowledge. (See *Lewis C. Nelson & Sons v. Clovis Unified School Dist.* (2001) 90 Cal.App.4th 64, 71 [the Legislature's decision to use and not use a certain word in various provisions shows it "knows how to use th[at] word"].) Tsasu's conclusion does not flow from its premise. While it is true that the Act uses the word "notice" (§§ 761.010, subd. (b), 765.010, subd. (c)(2),) and a variety of words with the root word "know" (§§ 762.020, 762.030, 762.060, 763.010), the Act does not use those terms in a consistent manner that permits us—let alone compels us—to conclude that all of the Act's uses of the word "know" refer to *actual* knowledge.

18

Lastly, Tsasu asserts that the Act's legislative history supports its interpretation.  The sole citation Tsasu provides does not support its argument, and, as explained above, we conclude that Tsasu's interpretation of section 764.060 would undermine—not further—the Act's purposes.

For these reasons, the term "knowledge" in section 764.060 refers to actual and constructive knowledge.

## B.  *Applying section 764.060*

In light of our construction of section 764.060, whether the Tsasu Deed of Trust retains its priority notwithstanding the invalidation of the 2015 Quiet Title Judgment turns on whether Tsasu (1) acquired its interest "for value," (2) "act[ed] in reliance" on the 2015 Quiet Title Judgment in acquiring its interest, and (3) lacked actual and constructive "knowledge of any defects or irregularities in th[at] judgment or the proceedings [leading up to it]." (§ 764.060.)  Although "the issue of whether a buyer is a [bona fide purchaser for value] is a question of fact" (*Melendrez*, *supra*, 127 Cal.App.4th at p. 1254), where the "relevant facts are not in dispute, [such] questions of fact may be decided as a matter of law in a summary judgment proceeding." (*Wang v. Nibbelink* (2016) 4 Cal.App.5th 1, 28.)  Here, it is undisputed that Tsasu acquired its interest in the property for value by loaning Celestine $248,000.  We need not decide whether Tsasu acted in reliance on the 2015 Quiet Title Judgment because the undisputed facts establish that Tsasu had constructive knowledge of "defects and irregularities" with that judgment.

As noted above, a quiet title judgment under the Act must name as defendants those "known to the plaintiff" to have an interest in the property (§§ 761.020, 762.060, subd. (b)), but Celestine knowingly named only a *prior* owner of the CIT Deed of

19

Trust (that is, CIT Group) rather than its current owner. Tsasu does not dispute that this constituted a defect or irregularity in the quiet title judgment or proceeding.

Tsasu had constructive knowledge of this defect or irregularity in two different ways.

    1. *Constructive knowledge from the record of title*

First, the record of title for the property contained (1) the recorded 2015 Quiet Title Judgment setting forth that the sole defendant was CIT Group, and (2) the recorded assignments of the CIT Deed of Trust in 2012 and June 2014 (to SASCO and DLJ Mortgage, respectively) setting forth that CIT Group no longer owned the CIT Deed of Trust when Celestine filed her quiet title action. Together, these recorded documents set forth a defect or irregularity in the quiet title judgment. Because these documents were recorded, Tsasu had constructive knowledge of the defect or irregularity in the 2015 Quiet Title Judgment. (*First Bank*, *supra*, 199 Cal.App.4th at p. 1314 [constructive knowledge exists where the fact is contained in a document that has been "'recorded as prescribed by law'"].)

Tsasu offers three reasons why the documents in the record of title did not put it on constructive notice of any defect or irregularity in the 2015 Quiet Title Judgment.[6]

---

6 Tsasu also relies on an expert declaration that was submitted in support of its new trial motion. Because that declaration was not submitted as evidence in connection with the cross-motions for summary judgment, we will not consider it—or Tsasu's argument relying on it. (§ 437c, subd. (c) [ruling on summary judgment motion must be based on "papers submitted" with the motion]; *Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 ["The appellate court must examine only papers before the trial court when it considered the

20

To begin, Tsasu asserts that courts are "presumed" to have "regularly performed" their "official duty" (Evid. Code, § 664), such that persons reviewing the record of title for the property should be able to assume that, as between a quiet title judgment and other recorded documents calling the judgment into question, the quiet title judgment is correct and the other documents, incorrect.  This assertion ignores that the presumption Tsasu cites is a rebuttable one (*id.*, §§ 660, 601), and that it is rebutted by the ostensible conflict between the quiet title judgment and other recorded documents.  Tsasu makes the further assertion that quiet title judgments under the Act are entitled to an even greater presumption of regularity because, as noted above, they may not be entered "by default" (§ 764.010).  However, the Act's requirement that judgments must be grounded in evidence says nothing about whether the proceedings leading up to that evidentiary showing were defective or irregular.  To accept Tsasu's assertions is to say that there can *never* be constructive notice on the basis of a conflict in the record of title between a quiet title judgment and other recorded documents, which goes a long way toward excising the phrase "without knowledge of any defects or irregularities in the judgment or the proceedings" from section 764.060.  We cannot rewrite statutes.  (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657, fn. 7 ["It is not for us to rewrite . . . statute[s]"].)

Next, Tsasu contends that prospective purchasers or encumbrancers should not be required to "go behind [the] quiet

_____

motion, and not documents filed later"]; see also *Albertini v. Schaefer* (1979) 97 Cal.App.3d 822, 829 [on review of validity of summary judgment, appellate court cannot consider declarations submitted with new trial motion].)

21

title judgment" and to assess the quantum of evidence supporting that judgment, but this contention misstates what the use of "without knowledge" in section 764.060 means.  All it means is that the quiet title judgment and other recorded documents available or known to the prospective buyer may, as a whole and on their face, reveal "defects or irregularities" in that judgment; contrary to what Tsasu suggests, this does not impose a duty of "going behind the judgment" or reweighing the evidence.

Lastly, Tsasu posits that the validity of a quiet title judgment cannot be called into question by conflicts with prior assignments of the pertinent deed of trust because assignments need not be recorded and are often not timely recorded.  No matter how assignments might be handled in other cases, the fact remains that the assignments recorded in 2012 and 2014 *in this case* highlighted a defect or irregularity in the 2015 Quiet Title Judgment.

2. *Constructive knowledge from the failure to conduct a reasonable inquiry*

Second, Tsasu was aware of circumstances which, upon reasonable inquiry, would have led to the discovery of that same defect or irregularity.  (*Melendrez*, *supra*, 127 Cal.App.4th at p. 1252.)  That is because Tsasu (through its CEO) treated its title insurer as its agent when the CEO relied on the insurer's preliminary report and, by extension, the insurer's title search in deciding whether to loan Celestine money.  Because the title search also reported the quiet title judgment *against CIT Group* and the two earlier assignments of the CIT Deed of Trust to parties *other than CIT Group*, and because an agent's knowledge is imputed to its principal (see Civ. Code, § 2332 ["As against a principal, both principal and agent are deemed to have notice of whatever either has notice of . . ."]; *Maron v. Swig* (1952) 115

22

Cal.App.2d 87, 90 [knowledge acquired by agent is imputed to principal whether or not that knowledge was "actually conveyed to" principal]), Tsasu also had constructive knowledge of the defect and irregularity in the 2015 Quiet Title Judgment by virtue of its insurer's awareness of these circumstances that is imputed to Tsasu.

Tsasu argues that it was not on "inquiry notice" on the basis of the information its title insurer learned from the title search results because a title "insurer's knowledge is not imputed to its insured." (*Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1869; *Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1255.) Although the bare relationship between a title insurer and its insured is not enough to make the former an agent of the latter, a title company *can* sometimes act as an agent of its insured. (*Bellasi v. Shackelford* (1962) 201 Cal.App.2d 265, 268; *Triple A Management*, *supra*, 69 Cal.App.4th at p. 530; *Vasquez*, *supra*, 52 Cal.App.5th at pp. 108-109.) Here, Tsasu used its title company as its agent for purposes of acquiring knowledge about the record of title for the property because Tsasu's CEO admitted he looked to the title insurer's preliminary report and title search results when evaluating whether to loan Celestine money. As a result, Tsasu is charged with its title insurer's knowledge of the results of the title search. (Accord, *Triple A Management*, at p. 530 ["The fact that [an] encumbrancer searches and evaluates the record through an escrow or title agent does not in any manner diminish his right to rely on the state of the record title"].)

\*       \*       \*

Because Tsasu had constructive knowledge of defects or irregularities in the 2015 Quiet Title Judgment at the time it

23

acquired its interest in the property, section 764.060 does not insulate Tsasu from the effect of the subsequent invalidation and expungement of the 2015 Quiet Title Judgment. As a result, the CIT Deed of Trust—as the lien recorded first-in-time—has priority over the Tsasu Deed of Trust.

## II. Alternative Grounds for Asserting Lien Priority

Even if the priority of the Tsasu Deed of Trust is not preserved under the Act, Tsasu argues that it is preserved by several other doctrines. Tsasu's arguments fall into two broad categories.

### A. *Tsasu's lack of involvement in the proceedings to set aside and expunge the 2015 Quiet Title Judgment*

Tsasu argues that it should have received notice of Caliber's December 2016 motion to set aside the 2015 Quiet Title Judgment as well as Caliber's subsequent motion to expunge that judgment, and should have been invited to participate in those proceedings. Its absence, Tsasu continues, means that the resulting orders setting aside and then expunging the 2015 Quiet Title Judgment are invalid as to Tsasu because they were issued without the involvement of an indispensable party and in violation of Tsasu's rights to due process. Tsasu is wrong on both counts.

Tsasu was not an indispensable party. A person or entity is indispensable to litigation if "'the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of [the person or entity] not joined . . . .'" (*Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 667; see generally § 389, subd. (a) [defining "indispensable party" to include a person who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may . . . as a practical matter impair or impede [its]

24

ability to protect that interest"].) If we focus on the Celestine Action (of which Caliber's motion to set aside and expunge were just a part), Tsasu was not an indispensable party because the plaintiff *in the action*—that is, Celestine—was only seeking a determination of the validity of the CIT Deed of Trust as of September 11, 2014 (§ 761.020, subd. (d); *McGurk*, *supra*, 206 Cal.App.4th at p. 213), and this was an issue on which Tsasu had no relevant information or involvement. If we instead focus on Caliber's motions to set aside and expunge the 2015 Quiet Title Judgment, Tsasu was also not an indispensable party because Caliber's motions turned on the validity of Celestine's service on CIT Group in 2014, and this was (again) an issue on which Tsasu had no relevant information or involvement. (Cf. *Washko v. Stewart* (1941) 44 Cal.App.2d 311, 319 [joint tortfeasor exonerated by bench trial was indispensable in proceedings by another joint tortfeasor to set aside a default judgment against him].) Contrary to what Tsasu asserts, at no point in the Celestine Action generally or in Caliber's litigation of the motions to set aside and expunge did the trial court decide the priority of the CIT Deed of Trust lien vis-à-vis the Tsasu Deed of Trust— under the Act or otherwise. It was not until Tsasu filed *this* case that lien priority became an issue. Although the trial court's orders setting aside or expunging the 2015 Quiet Title Judgment were a necessary prerequisite to this case, Tsasu was not an indispensable party to that precursor litigation.

Tsasu's due process rights were also not violated when Caliber did not invite it to participate in its efforts to set aside and expunge the 2015 Quiet Title Judgment. Due process guarantees notice and the opportunity to be heard. (*Horn v. County of Ventura* (1979) 24 Cal.3d 605, 612.) Because the

25

priority of Tsasu's interest in the property was not litigated until this case, and because Tsasu has certainly had notice and the opportunity to participate in its own lawsuit, Tsasu's due process rights were not violated.

**B.** ***U.S. Bank's alleged failure to act with greater alacrity in seeking to set aside and expunge the 2015 Quiet Title Judgment***

Tsasu argues that U.S. Bank should be barred, as an equitable matter, from relying on the orders setting aside and expunging the 2015 Quiet Title Judgment because it waited more than nine months after acquiring the CIT Deed of Trust (that is, from August 2016 until May 2017) before telling Tsasu about the ongoing efforts to set aside and expunge the 2015 Quiet Title Judgment. More specifically, Tsasu relies on the equitable doctrines of (1) estoppel and the balancing of relative negligence under Civil Code section 3543, and (2) laches. Tsasu's arguments lack merit.

As a threshold matter, we harbor significant doubts that any of these equitable doctrines may be used to alter section 764.060's rule specifying how a person who relies on a quiet title judgment issued under the Act is affected by the subsequent invalidation of that judgment. Section 764.060 reflects our Legislature's thoughtful balancing of the rights of the persons harmed by an invalid quiet title judgment against the rights of persons who relied on that quiet title judgment before its invalidation. Where, as here, a statute reflects a "careful balancing of competing interests to maintain the overall working of the system" of law in a particular area, courts are reluctant to use equity to strike a different balance. (*I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 285, 288-289; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1193.) By

26

asking us to come to a different result than that dictated by section 764.060 on the basis of a variety of equitable doctrines, Tsasu is asking us to reach a different accommodation of competing rights than those embodied in section 764.060. We are not inclined to do so.

Even if we were so inclined, however, Tsasu's invocation of these equitable doctrines lacks merit in any event.

1.  *Estoppel and Civil Code section 3543*

Invoking both the equitable doctrine of estoppel and Civil Code section 3543, Tsasu argues that U.S. Bank was "inexplicably negligent" by not informing Tsasu of the then-ongoing efforts to set aside and expunge the 2015 Quiet Title Judgment. Individually and together, the doctrine of estoppel and Civil Code section 3543 provide that, as between two innocent victims, the more negligent of the two should be the one who suffers the loss. (Civ. Code, § 3543 ["Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer"]; *South Beverly Wilshire Jewelry & Loan v. Superior Court* (2004) 121 Cal.App.4th 74, 81 [holding that Civil Code section 3543 is "'basically an estoppel theory'"]; *Crittenden v. McCloud* (1951) 106 Cal.App.2d 42, 50 [doctrine of estoppel premised on "'negligence or some other misconduct by the other party'"].)

To benefit from either theory, the party urging application of that theory must establish that the other party "was, at a minimum, negligent." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 892 (*WFG National*).) Of course, a party can be negligent only if it owes a duty to the party now asserting a breach. (See *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 477 ["To prevail on [a]

27

negligence claim, plaintiffs must show that [the defendant] owed them a legal duty"]; *WFG National*, at pp. 892-894 [requiring a duty before applying estoppel and Civil Code section 3543].)

Tsasu cannot rely on estoppel or Civil Code section 3543 *against U.S. Bank* because Tsasu cannot establish that *U.S. Bank* owed any duty to inform Tsasu about the pending motions to set aside or expunge the 2015 Quiet Title Judgment. The motions to set aside and expunge the 2015 Quiet Title Judgment were filed by *Caliber*, not U.S. Bank. Although Caliber had at that time agreed to serve as U.S. Bank's attorney-in-fact, it was undisputed that Caliber filed its motions solely in its capacity as CIT Group's successor in interest—and *not* on behalf of U.S. Bank. As a result, the relevant question regarding duty is this: Does a nonparty to a case (namely, U.S. Bank) owe a second nonparty to that case (namely, Tsasu) a duty to notify the second nonparty about collateral attacks on the judgment brought by a party in that case just because both of the nonparties might be affected by the outcome of those collateral attacks? The answer is "no." Any other answer would vastly expand the duties of property owners who just so happen to know about a pending collateral attack to a quiet title judgment based on defective service, the result of which could have downstream effects on the unrelated issue of lien priorities. (E.g., *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1149 [declining to create a duty that would be "far too broad"].) Tsasu offers no authority in support of such a duty and we have found none. Instead, the law leans heavily to the contrary. (*WFG National*, *supra*, 51 Cal.App.5th at p. 893 [property owner has no "ongoing duty to monitor public records in order to detect, and correct, a fraudulent or erroneous recording"]; cf. *Atha v. Bockius* (1952) 39

28

Cal.2d 635, 642 [negligence by owner of vehicle mortgage who knows the car's owner left the state and re-registered the vehicle can, by failing to repossess the car, forfeit right to collect on mortgage].)  Tsasu urges that we should impose a duty upon U.S. Bank because the 2015 Quiet Title Judgment purported to reach all "successors in interest" to CIT Group or to the CIT Deed of Trust, but Tsasu ignores that the 2015 Quiet Title Judgment was void *against CIT Group* and hence void against successors in interest to the CIT Deed of Trust.  That void judgment imposed no ongoing duty upon CIT Group, so it certainly imposed no ongoing duty upon the successors in interest to the CIT Deed of Trust.

But even if we assume that U.S. Bank owed some duty and further assume that U.S. Bank was negligent in not telling Tsasu about Caliber's efforts to set aside and expunge the 2015 Quiet Title Judgment sooner, Tsasu is still not entitled to relief because Tsasu was in the better position to avoid injury to itself.  As noted above, Tsasu had constructive knowledge of the "warning signs" in the record of title for the property indicating possible defects with the 2015 Quiet Title Judgment, and Tsasu nevertheless decided to loan Celestine money and to obtain title insurance.  Tsasu could have avoided the injury it suffered had it inquired further into the status of the 2015 Quiet Title Judgment.  Nothing U.S. Bank did, however, could have avoided Tsasu's injury.  Caliber—not U.S. Bank—was the entity who sought to set aside and expunge the 2015 Quiet Title Judgment.  Although U.S. Bank could have told Tsasu about Caliber's efforts sooner, there is no evidence in the record to suggest that doing so would have altered the outcome of Caliber's efforts:  Those efforts turned solely on whether Celestine had sued and served the

29

correct entity, and Tsasu has yet to articulate how it could have offered any evidence on those issues.

        2.    *Laches*

Tsasu next argues that U.S. Bank engaged in delay tactics by not telling Tsasu about Caliber's collateral attacks on the 2015 Quiet Title Judgment until May 2017, and that the equitable doctrine of laches precludes U.S. Bank from relying on the orders setting aside and expunging that judgment. This argument is not properly before us because Tsasu did not plead laches in its operative complaint. Tsasu insists that it did, but the paragraphs of its complaint it cites say nothing about laches or about *U.S. Bank's* delay in informing Tsasu about Caliber's efforts. Because the "pleadings define the issues to be considered on a motion for summary judgment" (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1355), Tsasu's failure to plead laches is fatal to its attempt to rely on it to avoid summary judgment.

        \*      \*      \*

In light of our conclusion that U.S. Bank is entitled to summary judgment due to the inapplicability of section 764.060 and the inapplicability of the alternative grounds offered by Tsasu, we have no occasion to reach Tsasu's challenges to the trial court's evidentiary rulings bearing solely on theories that our analysis has rendered moot.

30

**DISPOSITION**

The judgment is affirmed.  U.S. Bank is entitled to its costs on appeal.

**CERTIFIED FOR PARTIAL PUBLICATION.**


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

31